UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

In re:                                                 :        Chapter 11

                                                       :

AEGIS 42, LLC                                          :        Case No.  1-19-47698-ess

                                                       :

                        Debtor.                        :

------------------------------------------------------------ X

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that upon the annexed application of Samuel Goldman, a

hearing will be held before the Hon. Elizabeth S. Strong Bankruptcy Judge, to consider the motion

for an Order granting relief as follows: (a) dismissing this Chapter 11 case as filed in bad faith,

(b) remanding  the case of *Park v. Song*, which was pending in the New York State Supreme

Court, New York County under Index No. 650186/2017 ("the "State Court Action") until removed

to this Court on January 6, 2020 Court, on the grounds that (i) this case was filed in bad faith, (ii)

the removal was in bad faith, (iii) this Court's jurisdiction over the State Court Action was not

established, (iv) mandatory abstention applies, and (v) discretionary abstention is warranted, (c)

awarding  sanctions  against  Debtor's  counsel,  Lawrence  F.  Morrison  ("Morrison")  and  the

Debtor's purported President and Managing Member, Edward Song ("Edward") for their false,

fraudulent and bad faith filings and removal, and (d) and granting such other and further relief as

is just and necessary.

Date and time of hearing: February 7, 2020 10:00 am
Location: U.S. Bankruptcy Court
271-C Cadman Plaza East
Brooklyn, New York 11201-1800
Courtroom # _3585_ , _3rd_ Floor

Dated: January 14, 2020
New York, NY

SAMUEL GOLDMAN & ASSOCIATES

By: _/s/ Samuel Goldman_____
SAMUEL GOLDMAN
200 Park Avenue, 17th Floor
New York, New York 10166
(212) 725-1400
(212) 725-0805
sg@sgalaw.com
*Counsel for Plaintiffs*

2

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
............................................................X

In re:                                              :          Chapter 11

                                                    :

                                                    :

Aegis 42, LLC                                       :          Case No. 1-19-47698-ess

                                                    :

                        Debtor.                     :

............................................................X

### DECLARATION OF SAMUEL GOLDMAN IN SUPPORT OF MOTION TO DISMISS CHAPTER 11 CASE AS FILED IN BAD FAITH AND TO REMAND THE REMOVED LAWSUIT TO THE STATE COURT

I, Samuel Goldman, being duly sworn, declares and says:

1.      I am the principal of Samuel Goldman & Associates, counsel to Stephen Park, Thomas Yang, Paul Lee, Eric Yu and Andrew Chang Plaintiffs (hereinafter "Plaintiffs") in the State Court Action (defined below). I make this declaration in support of their motion for an order (a) dismissing this Chapter 11 case as filed in bad faith, (b) remanding the case of *Park v. Song*, which was pending in the New York State Supreme Court, New York County under Index No. 650186/2017 (the "State Court Action") until removed to this Court on January 6, 2020 Court, on the grounds that (i) this case was filed in bad faith, (ii) the removal was in bad faith, (iii) this Court's jurisdiction over the State Court Action was not established, (iv)_mandatory abstention applies, and (v) discretionary abstention is warranted, (c) awarding sanctions against Debtor's counsel, Lawrence F. Morrison ("Morrison") and the Debtor's purported President and Managing Member, Edward Song ("Edward") for their false, fraudulent and bad faith filings and removal, and (d) and granting such other and further relief as is just and necessary. Unless stated otherwise, I have personal knowledge of the facts and matters described herein based on information obtained in my capacity as Plaintiff's counsel.

2.      Morrison represented William Song, brother of Edward and not a party to the litigation, in connection with William's production of documents, including financial documents for entities he purportedly owned, including Aegis 42, LLC. He produced Aegis 42, LLC documents, including bank statements on behalf of William.

3.      I was on a telephone call in or about late September 2019, with Morrison, along with my research assistant Niall Harty, in which I asked Morrison if he would accept service of process on William Song, who he already represented, and on the other entities purportedly owned by William, including Aegis 42, LLC that were being added as defendants in the State Court Action.  He said he was 'waiting to hear from Mr. Green' i.e., waiting to be paid his retainer. Morrison never followed up or accepted service on behalf of anyone.

4.      Attached hereto as Exhibit A is a true and correct copy of the Notice of Removal dated January 6, 2020, signed by Lawrence F. Morrison.

5.      Attached hereto as Exhibit B is a true and correct copy of the original complaint in the New York State Supreme Court Action *Park v. Song* dated February 27, 2017.

6.      Attached hereto as Exhibit C is a true and correct copy of Edward's Response to Plaintiffs' Second Demand for Interrogatories dated August 15, 2018.

7.      Attached hereto as Exhibit D is a true and correct copy of the Order of Judge Jennifer Schecter entered on April 10, 2018.

8.      Attached hereto as Exhibit E is a true and correct copy of the order of Judge Jennifer Schecter entered on April 3, 2019.

9.      Attached hereto as Exhibit F is a true and correct copy of the So-Ordered Subpoena for William Song dated August 16, 2018.

10.    Attached hereto as Exhibit G is a true and correct copy of a letter from Lawrence Morrison to me dated June 24, 2019.

11.    Attached hereto as Exhibit H is a true and correct copy of the Order of Judge Jennifer Schecter, entered September 5, 2019.

12.    Attached hereto as Exhibit I is a true and correct copy of the First Amended and Restated Complaint dated September 25, 2019.

13.    Attached hereto as Exhibit J is a true and correct copy of an email from Jacquelyne Gilman to Larry Morrison dated October 2, 2019.

14.    Attached hereto as Exhibit K is a true and correct copy of the So-Ordered Stipulation to Stay Proceeding for Mediation dated October 8, 2019.

15.    Attached hereto as Exhibit L is a true and correct copy a string of emails between Samuel Goldman, Larry Morrison and Jacquelyne Gilman (paralegal at SG&A) dated from December 13, 2019 – January 3, 2020.

16.    No previous application for the relief requested herein has been made to any other court.

17.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 14, 2020
New York, NY

 /s/ Samuel Goldman
Samuel Goldman

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x
STEPHEN PARK, THOMAS YANG, PAUL LEE,
ERIC YU, and ANDREW CHANG all individually and
on behalf of KORILLA BBQ, LLC,                              E.D.N.Y. District Court
Plaintiff,                                                 Index No. 20-77

- against -                                                NY Supreme Court – NY County
                                                           Index No.: 650186/2017
EDWARD SONG, DAVID IM, KORILLA EAST
VILLAGE TRUCK, INC., WHITE TIGER NAMED
KORILLA, LLC, LET GROUP, LLC, AEGIS 233, LLC,
HARDY CHUNG, BYUNG KEUN SONG, WILLIAM
SONG, ESTHER CHOI, AEGIS 42, LLC, GRAND
KOAST LLC, KOAST LLC, KOMMISSARY LLC, 3E
LLC, John Does 1 through 10, KORILLA BBQ, LLC,
Defendants.
---------------------------------------------------------------

## **NOTICE OF REMOVAL**

**TO THE HONORABLE DISTRICT COURT JUDGE**
**ASSIGNED TO THESE PROCEEDINGS:**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §1452, 28 U.S.C., §157(a), Rule

9027 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and further based on

the grounds set forth in this Notice of Removal, defendants Aegis 42, LLC ("Defendants"), by and

through their counsel, MORRISON TENENBAUM PLLC., hereby remove this action from the

Supreme Court of the State of New York, County of New York, to the United States District Court

for the Eastern District of New York. This Court has original jurisdiction of this case pursuant to

28 U.S.C. §1334. In support of defendants' Notice of Removal, Aegis 42, LLC respectfully

represents the following:

1.      This action involves claims brought against Defendant by Plaintiffs, for damages

that allegedly resulted from stealing Korilla BBQ's intellectual property, and illicitly transferring

Case 1-19-47698-cec    Doc 10    Filed 01/14/20    Entered 01/14/20 16:46:36

that property to defendants. The amount of damages alleged are an amount to be determined at trial but not less than $5 million.

2.    Aegis 42, LLC hereby file this notice that a Chapter 11 bankruptcy petition was filed on its behalf in the United States Bankruptcy Court, Eastern District of New York, on December 23, 2019 under bankruptcy case number 19-47698.

3.    The issues and agreements at stake in the present action are inextricably linked to Debtor's pending bankruptcy proceedings.  The connections to the bankruptcy include, but are not limited to, the following:

a)  First, if the Bankruptcy Court approves Debtor's proposed restructuring plan, the Guarantors, Aegis 42, LLC, may be relived of any liability under the alleged guarantees that the Plaintiff in the instant action seeks to enforce.

b)  Second, any recovery awarded under the guarantees would be subject to a reduction of monies paid by the Debtor.

c)  Third, the Guarantors, have a defense of election of remedies, and the Plaintiff is required to elect its remedies, pursuant to the agreement by and between all parties in the instant action.

d)  Fourth, the prohibition against duplicative recovery requires that, in the event a judgment is enforced by Plaintiff in this action, the resulting recovery be applied as an offset to reduce its claims against the bankruptcy estate, thereby potentially increasing the distribution to the Plaintiff and other potential creditors.

4.    Each claim and cause of action in this action is related to the Chapter 11 case of Aegis 42, LLC.  This action is one arising under title 11 or arising in or related to [a case] under title 11," and this Court therefore has original jurisdiction over this action.  28 U.S.C. §1334(b).

Jurisdiction exists under Section 1334(b) if the case "could conceivably have any effect on the estate being administered in bankruptcy." <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300, 308 n.6 (1995). *See* <u>In re Cuyahoga Equip Corp.</u>, 980 F.2d 110, 114 (2d Cir. 1992). "Related to" jurisdiction is construed broadly in the Second Circuit to encompass "nearly every matter directly or indirectly related to the bankruptcy." <u>Cal. Pub. Employees' Ret. Sys. V. WorldCom, Inc.</u>, 368 F.3d 86, 103 (2d Cir. 2004). A proceeding is "related to" a bankruptcy proceeding even if it does not involve claims against the debtor or the debtor's property. *See* <u>In re Cuyahoga</u>, 980 F.2d at 114.

5.      28 U.S.C. §1452(a) provides: "[a] party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Thus, because this Court has original jurisdiction over the Plaintiff's claims under section 1334, those claims may be removed to this Court under section 1452. Further, removal of each claim and cause of action of the civil action to the Bankruptcy Court is authorized by 28 U.S.C. §§1452, 1334 and 157 and the Amended Standing Order of Reference M10-468, Docketed at 12 Misc. 00032, dated January 31, 2012 and filed February 1, 2012 ("Amended Standing Order of Reference"). Removal is in accordance with Bankruptcy Rule 9027.

6.      Finally, the claims and cause of action subject to removal are "core" maters with respect to the Aegis 42, LLC's bankruptcy proceedings because their resolution will have a clear and direct impact on property of the estate under 11 U.S.C. §541. Indeed, the rights and responsibilities of the parties to this action cannot be decided without threshold determinations by the Bankruptcy Court, and certain claims may be mooted altogether if a restructuring plan is approved.

7.      In addition, resolution of the claims asserted in this action will significantly affect

FILED: NEW YORK COUNTY CLERK 01/06/2020 01:25 PM    INDEX NO. 650186/2017
NYSCEF DOC. NO. 314                                   RECEIVED NYSCEF: 01/06/2020

the handling and administration of the bankruptcy estate, would involve an estimation of claims or interest of the purpose of confirming a plan of reorganization under chapter 11, and would affect the adjustment of the debtor/creditor or the equity security holder relationship. Consequently, this action also involves "core" bankruptcy matters under 28 U.S.C. §157(b)(2) (A)(B) and (C).

8.     Pursuant to 28 U.S.C. §1446(a) and/or Bankruptcy Rule 9027(a)(1), all process, pleadings and orders served on Aegis 42, LLC in this action are being filed along with this Notice of Removal and are attached hereto.

9.     Pursuant to 28 U.S.C. §1446(d) and/or Bankruptcy Rule 9027(b) and (c), promptly after the filing of the instant Notice of Removal with the Court, copies of the instant Notice of Removal (without the attached state court pleadings) will be filed with the Clerk of the Court for the Supreme Court of the State of New York, County of New York and will be served on counsel for the other parties to the removed action.

10.    Aegis 42, LLC seeks removal pursuant to 28 U.S.C. 1446(b)(2)(A).

11.    Upon removal, the Debtor will promptly seek to refer this matter to the Bankruptcy Court.

Dated:    New York, New York              Respectfully submitted,
          January 6, 2020

                                          _____
                                          Lawrence F. Morrison, Esq.,
                                          Morrison Tenenbaum, PLLC.
                                          *Counsel for Defendants*

4

Case 1-19-47608-ess    Doc 10    Filed 01/14/20    Entered 01/14/20 16:46:36    INDEX NO. 650186/2017

RECEIVED NYSCEF: 01/06/2020

## LIST OF EXHIBITS

Exhibit 1.   Summons with Notice (NYSCEF doc no. 1)

Exhibit 2.   Complaint (NYSCEF doc no. 12)

Exhibit 3.   Amended Complaint (NYSCEF doc no. 301)

Exhibit 4.   Suggestion of Bankruptcy (NYSCEF doc no. 312)

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

STEPHEN PARK, THOMAS YANG, PAUL LEE
and ANDREW CHANG, all individually and on
behalf of KORILLA BBQ, LLC,

                       Plaintiffs,

    -against-

EDWARD SONG, DAVID IM, KORILLA BBQ,
LLC, KORILLA EAST VILLAGE TRUCK, INC.,
WHITE TIGER NAMED KORILLA, LLC, LET
GROUP, LLC, MOKBAR, LLC, MOKBAR II,
LLC, AEGIS 233 LLC, ESTHER CHOI, HARDY
CHUNG and YOUNG SUN SONG,

                     Defendants.

Index No. 650186/17

COMPLAINT

---

       Plaintiffs Stephen Park, Thomas Yang, Paul Lee and Andrew Chang, all individually

and on behalf of Korilla BBQ, LLC, by their attorneys The Silber Law Firm, LLC, for their

Complaint against defendants Edward Song, David Im, Korilla BBQ, LLC, Korilla East

Village Truck, Inc., White Tiger Named Korilla, LLC, LET Group, LLC, Mokbar, LLC, Mokbar

II, LLC, Aegis 233 LLC, Esther Choi, Hardy Chung and Young Sun Song, complain and

allege as follows:

       1.      Plaintiffs Park, Yang, Lee and Chang are residents of Queens, New York and

members of Korilla BBQ, LLC, together with defendants Edward Song ("E. Song") and

David Im.

       2.      Korilla BBQ, LLC is a New York State limited liability company.  Korilla BBQ is

in the food service business, selling Korean-Mexican barbeque.

       3.      The individual defendants reside, upon information and belief, in Queens and

Kings Counties.

4.      Defendants Aegis, LLC and Mokbar II, LLC are New York State Limited

Liability Companies and are located in New York County.  Defendants Hardy Chung and

Esther Choi control these two LLC entities, respectively.

5.      The remaining LLC entity defendants are New York State Limited Liability

Companies with their principal places of businesses located in New York City.

6.      Upon information and belief, defendant E. Song purports to hold interests in

Korilla BBQ, LLC, Korilla East Village Truck, Inc. ("Korilla East"), White Tiger Named Korilla,

LLC ("White Tiger Korilla") and LET Group, LLC.

7.      Korilla East and White Tiger Korilla are operated by E. Song.

8.      Among other things, E. Song stole the business of Korilla BBQ and used LET

Group, White Tiger Korilla and Korilla East to actively compete with it, and then destroyed

Korilla BBQ with his misconduct.

9.      Upon information and belief, defendant Esther Choi has an interest in the two

defendant Mokbar entities and operates them as restaurants.

10.     Upon Information and belief, defendant E. Song has an interest in those

Mokbar entities.

11.     Defendant Im, upon information and belief, is partners with defendant E.

Song in the LLC entities identified in ¶ 6.

12.     Defendant Young Sun Song is the mother of defendant E. Song.

13.     This case addresses, among other things, plaintiffs' allegations that

defendant E. Song has (i) converted the business and assets of Korilla BBQ, (ii) improperly

competes with Korilla BBQ by using Korilla BBQ's intellectual property and by

misrepresenting his businesses to the public, (iii) plays off the goodwill and reputation of

Korilla BBQ, (iv) has violated every duty and obligation owed to his co-members in Korilla

2

BBQ and (v) has effectively killed off Korilla BBQ and its business.

14.     E. Song has not just stolen Korilla BBQ's intellectual property, but has illicitly transferred that property to defendant LET Group, LLC, an entity controlled by E. Song, and used that highly visible intellectual property to compete with and destroy Korilla BBQ.

15.     The remaining defendants have either assisted E. Song in taking assets of Korilla BBQ or have been the knowing recipient of gifts or purported investments from E. Song using money stolen from Korilla BBQ.

16.     This action is also brought derivatively as some of the claims herein overlap with the individual plaintiffs' allegation of damage to Korilla BBQ, LLC but is separate from the allegations by the individual plaintiffs.

17.     As a result of this conduct, plaintiffs have been irreparably harmed in myriad ways, requiring not just money damages but injunctive and other equitable relief.

### *Background*

**A.     The Food Truck Concept and Business**

18.     In 2009 plaintiff Stephen Park and defendant E. Song joined to open a restaurant.

19.     Thereafter, they decided to begin operating a "food truck" focusing on Korean-Mexican barbeque.

20.     This concept was a success.

21.     In 2010, as the food truck proved to be successful and its business thrived, Park operated and managed the daily business of the truck while E. Song managed the back office, and also tried to raise capital to expand the food truck concept.

22.     The two treated their business as equal partners, although no formal

agreement had been executed between them.

23.     E. Song aggressively sought growth opportunities but was unable to procure

sufficient funds or complete his merger ideas.

24.     The truck business remained profitable.

25.     Later in 2010, plaintiffs Thomas Yang and Paul Lee, non-party Eric Yu and

defendant David Im invested approximately $180,000 into Korilla BBQ for the purpose of

purchasing two additional food trucks and a commissary, and for building out a company

office.

26.     A First Amended and Restated Operating Agreement of Korilla BBQ, LLC,

with a date of November 2, 2010, was prepared but not executed by all of the parties

thereto (the "Operating Agreement").

27.     The Operating Agreement signed only by E. Song, Thomas Yang and Eric

Yu, provided, in part, that:

(i)  all assets would be held by and for Korilla BBQ;

(ii)  E. Song was the Manager, who was obligated to use appropriate care in
his duties and devote sufficient time to do so;

(iii)  included confidentiality and non-compete provisions for the members;

(iv)  required the maintenance of company books and records, which were
available for member inspection; and

(v)  specifically required that all company income was to be deposited into
bank accounts, which were not to be commingled with E. Song's money or accounts.

28.     The Operating Agreement did not provide the parties' ownership interest in

Korilla BBQ.

29.     Lee assisted in the trucks' unique design.  Park was the most knowledgeable

in selecting tools and equipment for the commissary and organizing the truck, and in charge

4

of the truck's production and food organization.

30.     E. Song had no knowledge of these areas.

31.     The food truck business was at this time generally receiving substantial

publicity, with Korilla BBQ's business singled out as a successful venture in the food truck

business.

32.     Additionally, E. Song controlled defendant LET Group and wanted to and did

transfer Korilla BBQ's intellectual property to that entity so as to cut out some of Korilla

BBQ's members from the benefits of that valuable property.

33.     A Memorandum of Agreement, dated February 9, 2011, between E. Song

and Korilla BBQ, signed by E. Song, Thomas Yang and Eric Yu, purported to pay LET

Group 15% of Korilla BBQ's net profits for "licensing and/or franchise fee."

34.     This agreement seemed intended to act as a cover for payments that E. Song

funneled from Korilla BBQ to LET Group, an entity in which he held a substantial interest.

35.     Yang never received any distributions from LET Group.

36.     This agreement was a means for E. Song to skim money from Korilla BBQ

with the veneer of a proper business arrangement.

37.     Thereafter, at E. Song's request, Yang sold to Andrew Chang 2.5% of his

interest in Korilla BBQ for $10,000.  Chang would be a manager on one of the trucks.

38.     Korilla BBQ's membership interest was held by E. Song (41.7%), Stephen

Park (12.67%), Thomas Yang (14.73%), Eric Yu (6.94%), David Im (8.33%), Paul Lee

(13.13%) and Andrew Chang (2.5%).

39.     During this time, as before, Korilla BBQ's business was fast-paced and

required long days on the trucks.

40.     E. Song, however, did not participate in the work on the truck in any

5

meaningful way.

**B.      Korilla's Business Receives Substantial Attention**

41.      The Korilla BBQ food trucks were doing well and continuing to build a

reputation and following among both "foodies" and the press.

42.      Korilla BBQ moved to an upgraded commissary to better prepare its food.

43.      In early 2011, while the new trucks were being brought to use in Korilla BBQ's

business, the individuals learned that Korilla BBQ was selected to receive an invitation to

compete in a nationally televised show, called The Great Food Truck Race on the Food

Network (the "Race").

44.      This was a prestigious selection which would bring Korilla BBQ substantial

publicity and exposure and further cement its reputation as a primary player in the food

truck and Korean-Mexican barbeque fast food business.

45.      The truck designs were uniquely built to allow quicker and more efficient

delivery of the food which helped the truck compete in the Race.

46.      This exposure would bring Korilla BBQ meaningful work in corporate catering

and other opportunities separate from retail sales off the trucks.

47.      Korilla BBQ was accepted into the Race and Lee, Park and E. Song attended

the Race.

48.      One of the three food trucks was taken to the competition with the other two

remaining on the street, operated by Im and Chang.

49.      This competition generated positive press and social media exposure for

Korilla BBQ.

50.      The growth of Korilla BBQ's reputation allowed it to garner corporate catering

work, and by just the Summer of 2011, generated almost $100,000 of income to Korilla

6

BBQ.

## C.    E. Song's Gross Misconduct and Theft of Company Assets and Business

51.    Upon return from the Race, Lee and the others discovered that the books and revenue records had not been properly kept.

52.    Lee took over most of the company bookkeeping, with Yang double-checking some of the work.

53.    Lee also overhauled Korilla BBQ's social media presence, including its substantial presence on Twitter, Instagram and Facebook, important tools for Korilla BBQ's business.

54.    Nonetheless, E. Song insisted that he take over the bookkeeping and suddenly, post-Race, wanted full control of Korilla BBQ.

55.    E. Song refused to allow anyone other than himself to control the business and banking records.  Park also had access to the bank account, but did not take care of the business's books.

56.    In October 2011, cash transfers were made from Korilla BBQ's bank account to accounts controlled by E. Song.

57.    No permission was requested or obtained, nor did E. Song provide any disclosure for these transfers.  These transfers of company funds were made without authorization and for the personal benefit of E. Song and, upon information belief, E. Song's subsequent transfer to the other defendants.

58.    These transfers were not for Korilla BBQ's benefit or business interests.

59.    As plaintiffs would later learn, in addition to his personal use of company funds, over time, E. Song used company funds to provide gifts and seed money to, among others, (i) entities that would compete with Korilla BBQ, including LET Group, Korilla East

7

and White Tiger Korilla (ii) his girlfriend defendant Esther Choi and her entities defendants Mokbar, LLC and Mokbar II, LLC (iii) a friend and partner, defendant Hardy Chung and his entity, Aegis 233, LLC, and (iv) his mother, defendant Young Sun Song, who it is believed to have transferred those funds out of the country.

60.     E. Song also used Korilla BBQ funds to renovate his parents' personal property under the guise of the space being used for Korilla BBQ.  That was never the case.

61.     E. Song also converted Korilla BBQ's intellectual property and transferred that to LET Group.

62.     Specifically, in 2011, Korilla BBQ received federal trademark registrations for the KORILLA BBQ logo, and the KBBQ and KORILLA marks.

63.     Thereafter, E. Song, acting alone, filed assignment documents by which he assigned and transferred these valuable marks from Korilla BBQ to defendant LET Group.

64.     Upon information and belief, LET Group paid no consideration for these valuable assets.

65.     Upon information and belief, these transfers were intended to steal Korilla BBQ's assets for E. Song and his associates' benefit.

66.     In 2016, E. Song applied for registration of the KORILLA mark for catering services, with LET Group as the applicant.  That registration is pending.

67.     As time went on, in 2012, E. Song's girlfriend took E. Song away from the business, leading to his mismanagement of the finances of the business and his need for cash.

68.     He thus helped himself to company monies to support his lifestyle.

69.     When challenged with this misconduct, E. Song demurred but did not deny his theft, and promised to repay the stolen funds.

8

70.     Because the company revenue was largely cash, certainly for sales from the truck, tight controls were necessary to properly manage and record revenues.

71.     Despite his promises, E. Song refused to implement appropriate controls or to relinquish control of the accounting and banking.

72.     He did this so that he could siphon off company funds for his personal use, knowing that tracking those cash funds was difficult.

73.     E. Song was not involved in a meaningful way in day to day business of the trucks but knew that because of the success of the truck-based business and its fast-paced sales, the others would have difficulty monitoring his conduct.

74.     E. Song could also exhibit a volatile personality.

75.     E. Song knew this and given his "management" role with the business was able to control the cash of the business and act with a free hand.

76.     As a result of this conduct, the business was often faced with a cash-flow shortfall.

77.     Things came to a head when a literal trail of cash, in large denominations, was found on the street in front of E. Song's house, leading into the house.

78.     While E. Song continued to refuse to cooperate with Lee and the plaintiffs to steady Korilla BBQ and account for missing money, he did admit to giving money to his mother, who transferred the money to unspecified people in South Korea.

79.     E. Song promised to try to get those funds returned.

80.     Lee tried to go through the company books, but E. Song and his girlfriend refused to cooperate.

81.     To keep Korilla BBQ afloat, Lee paid approximately $15,000 out of pocket to cover critical company bills.  Lee expected to be repaid.

9

NYSCEF DOC. NO. 12

82. At this point, being abused by E. Song and frustrated, Lee backed off of the company management.

83. Plaintiffs at this point had no idea how the company was managed, as E. Song and his girlfriend oversaw the operations of the trucks.

84. During this time, E. Song claims to have built offices for Korilla BBQ's business in his parents' property, investing substantial funds, but which were never used by Korilla BBQ.

85. E. Song and his girlfriend instead lived at that property.

86. In early 2013, E. Song's mismanagement led to the permit and license fees for two trucks to go unpaid, something not then known to plaintiffs, leading to the two trucks being suspended from street operations crippling Korilla BBQ and removing it from its street business and street visibility.

87. While the trucks were off the street, equipment was stolen off them and from the commissary.

88. Due to E. Song's behavior, Korilla BBQ's business quickly collapsed.

89. In an effort to reverse the situation, Lee made overtures to E. Song, and Yang threatened a lawsuit, hoping that E. Song would at least release the banking and social media accounts to the others.

90. The parties worked valiantly to revive Korilla BBQ's business, despite E. Song's involvement.

91. Lee was able to secure a catering deal, using those proceeds to pay the license and permit fees which allowed the trucks to return to the street.

92. Plaintiffs worked at a fever pitch to restore Korilla BBQ's reputation.

93. Over the Summer of 2013, more catering work was forthcoming, including

10

highly visible work, and revenue improved.

94. E. Song's ongoing management and bank account access was a source of serious concern among the individual plaintiffs.

95. Finally, E. Song agreed that Im would take over the company's books and that he would step back from an active role with Korilla BBQ.

96. Im would also control the commissary and oversee the trucks.

97. While the individual plaintiffs did not believe that this was the best approach they felt that E. Song had to be replaced and agreed.

98. However, E. Song was able to maintain access to the bank accounts as he was the account signatory, thus allowing him to continue taking Korilla BBQ funds.

**D. Defendants' Compete with Korilla BBQ**

99. Because E. Song had refused to pay company bills the individual plaintiffs were forced to either do so from their pockets or make arrangements with the vendors.

100. In early 2014, E. Song tried to open a storefront business called Korilla FiDi with defendant David Im.

101. E. Song and Im specifically tried to piggy-back off the name recognition of Korilla BBQ in trying to open Korilla FiDi.

102. In doing so, without the knowledge of the individual plaintiffs, E. Song pledged the assets of Korilla BBQ to secure a loan for this store.

103. His effort to open this store failed as E. Song was unable to secure sufficient investors or funding.

104. At a later meeting E. Song discussed with Lee and Chang options by which he could form a "new Korilla" entity, but without the remaining members.

105. Plaintiffs would later learn that this was not the first time that E. Song

11

discussed a scheme by which he would take the Korilla name and business assets and form a new entity with only some of the current Korilla BBQ members.

106.   Around June 2014, E. Song sold one of Korilla BBQ's trucks to another food truck business, but pocketed those sale proceeds.

107.   E. Song then left for South Korea.

108.   Before leaving, however, he began to build out a storefront, located in the East Village.

109.   When E. Song returned from South Korea, in October 2014, this store opened to compete with Korilla BBQ, using Korilla BBQ's trademark, trade secrets, money, employees, equipment and inventory.

110.   E. Song also terminated the individual plaintiffs' email accounts and changed the passwords to Korilla BBQ's social media accounts.

111.   This access was and remains critical to Korilla BBQ's sales and success, especially as to the truck business because that business communicated and promoted itself to its customers via social media.

112.   Social media was even more critical to Korilla's growth after the exposure earned by the Race.

113.   Despite his promise to back off from Korilla BBQ's business, E. Song demanded that the trucks be sold to defendant Hardy, who would operate them with plaintiffs.

114.   That demand was rejected by plaintiffs.

115.   While his store was being built, E. Song approached Im, who was often at the commissary where the company trucks were parked, and together they took all of Korilla BBQ's equipment and inventory.

12

116. This was nothing less than outright theft and crippled Korilla BBQ.

117. E. Song also refused to pay the vendors of Korilla BBQ.

118. All of this prevented the trucks from operating.

119. Lee and the others confronted Hardy who arranged for the return of the equipment and personally paid for the stolen inventory.

120. Lee and Park could not fight with E. Song and also operate the trucks, so they focused on the trucks.

121. At the same time, E. Song would direct some of the catering jobs to the trucks but take the proceeds of those jobs as soon as the checks were deposited.

122. Another example of E. Song's theft of Korilla BBQ's bank funds was a Groupon promotion for Korilla BBQ's truck that he launched.

123. This promotion allowed for the truck customers to buy a coupon entitling them to a discounted meal from the truck.

124. E. Song did not inform plaintiffs of this promotion so that customers showed up to the truck with discounted coupons, without allowing the truck to prepare for the onslaught of customers.

125. Not honoring the Groupon promotion was not a viable option for the trucks, as it would face a disgruntled public.

126. The proceeds of this promotion was paid by Groupon by check to Korilla BBQ, the proceeds of which E. Song simply took from the Korilla BBQ bank account.

127. At this point, in 2015, one truck remained operational for plaintiffs.

128. E. Song's store called Korilla BBQ, but operated under Korilla White Tiger or LET Group, was operational and actively and openly competing with Korilla BBQ.

129. From this point on, while in control of Korilla BBQ's social media accounts

13

and email communications, E. Song continued to usurp and steal numerous opportunities that were intended for Korilla BBQ.

130. Separate from his competition, E. Song's misconduct caused obvious confusion and actual lost sales and opportunities for Korilla BBQ.

131. E. Song impersonated and used the Korilla BBQ name to steal those business opportunities including very valuable and highly visible catering jobs.

132. Because E. Song maintained his access to Korilla BBQ's bank account, and because the proceeds of the truck's catering jobs were deposited into these accounts, E. Song was able to take the funds generated by the truck's catering jobs.

133. Some of these checks were mailed to E. Song's house.

134. This went on for about a year.

135. In 2016, Korilla BBQ's last truck was booted and towed due to unpaid parking tickets.

136. Plaintiffs did not know the extent of these tickets because they were mailed to E. Song's house and E. Song never informed plaintiffs of the matter.

137. While the truck was towed, it ended up in the possession of defendant Choi, E. Song's girlfriend.

138. At this point E. Song and his associates had killed off Korilla BBQ.

139. In March 2016, Lee worked on raising funds to repair one of the old trucks to bring it back to the street.

140. E. Song knew this, and told Lee that he had a buyer for the truck. Lee refused.

141. Despite this refusal, Lee and the others later learned that E. Song had sold that truck and pocketed the funds.

14

142.    E. Song was aware that plaintiffs intend to repair this truck and bring it back to the street.

143.    E. Song's theft and subsequent sale of this truck was intended to prevent plaintiffs from doing so.

144.    E. Song was able to access the trucks, parked at the commissary, as the facilities serviced a number of food truck businesses so that access was not difficult.

145.    This continued the pattern of E. Song's efforts to sabotage Korilla BBQ's truck, including by stealing the truck's generator and its license plates, with the assistance of defendant Im.

146.    E. Song even took the street parking/selling spots long-held by Korilla BBQ in his effort to first prevent plaintiffs from operating Korilla BBQ and later to steal that business by improperly and unfairly competing.

147.    An additional motivation for E. Song's efforts to put plaintiffs' trucks out of business or at least off the street was that his competing trucks were able to take the place of plaintiffs' disabled trucks and reap the proceeds of the trucks' substantial cash sales.

148.    Thus, as of March 2016, Korilla BBQ was unable to operate.

149.    E. Song, however, has trucks on the street, impersonating Korilla BBQ and continues to open stores, his latest called KBBQ by Korilla, and build his stolen brand.

150.    At no time did E. Song dedicate his efforts to further Korilla BBQ's business. E. Song's approach was to find a way to at some point and in some way to steal the business and its opportunities for himself.

151.    He did this while allowing and encouraging the individual plaintiffs to literally build the business of Korilla BBQ from the ground up to become a name brand business with a substantial reputation and visibility.

15

152.     E. Song then used that reputation for his benefit by representing that his businesses were Korilla BBQ and its affiliates.

153.     At the end, E. Song was successful in killing off Korilla BBQ while at the same time taking its revenue, assets and business reputation for his own benefit.

154.     Currently, to plaintiffs' knowledge, E. Song operates multiple stores and a truck that is nearly identical to the one that plaintiffs had operated.

155.     Korilla BBQ's truck and retail location in New York City are currently operated by defendant LET Group.

156.     Plaintiffs do not share in the benefit of those businesses to their ongoing and irreparable harm.

157.     E. Song's misconduct was not only intended to benefit himself, but also those associated with him, including defendants Im, Hardy and Choi, and their businesses and entities.

158.     Because there was no board of Korilla BBQ, any demand upon E. Song and David Im to commence this litigation on behalf of Korilla BBQ would have been futile, as E. Song was the individual and driver behind every allegation that has destroyed plaintiffs' business.

AS AND FOR A FIRST CAUSE OF ACTION
(*Accounting against all Defendants*)

159.     Plaintiffs repeat and reallege all of the forgoing.

160.     Upon information and belief, E. Song funneled money that he stole from Korilla BBQ to the other defendants for personal use or as some investment or loan to other businesses.

161.     E. Song had no right or authority to do so.

16

162.   Despite demand for the restoration of those funds, and E. Song's agreement to do so, the stolen funds were never returned.

163.   As a result, Korilla BBQ was damaged, in some cases irreparably damaged, by the ongoing cash shortfall which resulted from this theft and misconduct.

164.   Each of the defendants that received this illicit money benefitted from it, to the detriment and damage of Korilla BBQ.

165.   Upon information and belief, the recipients of this money were aware or should have been aware that the source of the money was not E. Song, and that the money was not properly provided by him.

166.   Korilla BBQ does not know, and has no good way to know how much money E. Song took and how much the recipients received.

167.   Korilla BBQ has no adequate remedy at law.

168.   Accordingly, this Court should direct that an accounting of defendants be provided to plaintiffs.

AS AND FOR A SECOND CAUSE OF ACTION
(*Unjust Enrichment against all Defendants*)

169.   Plaintiffs repeat and reallege all of the forgoing.

170.   The monies received by defendants did not belong to them and they have no viable claim to those monies.

171.   Allowing those defendants that received funds from or via E. Song to keep those funds would be unjust, allowing them to reap an undeserved windfall and damage plaintiffs.

172.   Accordingly, defendants have been unjustly enriched and plaintiffs are entitled to recover, jointly and severally as applicable from those defendants, in an amount

17

to be determined at trial, plus interest and costs.

## AS AND FOR A THIRD CAUSE OF ACTION
### (*Declaratory Relief against LET Group, LLC*)

173.     Plaintiffs repeat and reallege all of the forgoing.

174.     The Federal trademark registration for **KORILLA** was obtained by Korilla

BBQ on May 31, 2011, under registration number 3971933 in Class 35, for retail foods

services and "mobile street vendor services featuring food and drink."

175.     Before the registration was even issued, by Assignment dated July 30, 2010

and filed and recorded on November 6, 2010, E. Song transferred the **KORILLA** application

to LET Group, LLC.

176.     The Federal trademark registration for **KORILLA BBQ LOGO and WORD**

mark was obtained by Korilla BBQ on September 13, 2011, under registration number

4068272 in Class 35, for retail foods services and "mobile street vendor services featuring

food and drink."

177.     By Assignment dated November 29, 2011, and recorded on June 16, 2014,

but dated *nunc pro tunc* with an effective date of December 15, 2011, E. Song transferred

the **KORILLA BBQ LOGO and WORD** mark to LET Group, LLC.

178.     The Federal trademark registration for **kbbq** was obtained by Korilla BBQ on

November 15, 2011, under registration number 4056254 in Class 35, for retail foods

services and "mobile street vendor services featuring food and drink."

179.     By Assignment dated November 15, 2011, and filed and recorded on June

16, 2014, but dated *nunc pro tunc* with an effective date of December 15, 2010, E. Song

transferred the **kbbq** mark to LET Group, LLC.

180.     Upon information and belief, these assignments are legally ineffective,

18

although the assignments have been accepted as a practical matter.

181.    These three trademark registrations are referred to as the "Korilla Marks."

182.    LET Group currently operates businesses that use the Korilla Marks as an integral component of its businesses.

183.    LET Group has reaped substantial income and profits as a result of its misappropriation and misuse of the Korilla Marks.

184.    Upon information and belief, no consideration was paid for the assignments of the Korilla Marks.

185.    E. Song is the sole or principal member of LET Group.

186.    E. Song transferred the Korilla Marks, the property of Korilla BBQ, for his own benefit and for the benefit of LET Group.

187.    None of the individual defendants are members of LET Group or otherwise receive any benefit from that entity.

188.    E. Song hid these assignments from plaintiffs.

189.    The assignments of the Korilla Marks were made without any member vote and E. Song had no authority to effectuate these assignments.

190.    The Korilla Marks belong to Korilla BBQ.

191.    Accordingly, this Court should declare that Korilla BBQ is the only and rightful owner of the Korilla Marks.

192.    Plaintiffs have been irreparably harmed by this misconduct and have no adequate remedy at law.

## AS AND FOR A FOURTH CAUSE OF ACTION
*(Conversion against LET Group, LLC and Edward Song)*

193.    Plaintiffs repeat and reallege all of the forgoing.

19

194.    As alleged, E. Song and LET Group have taken the Korilla Marks which belong to Korilla BBQ.

195.    As such, E. Song and LET Group have converted for themselves valuable property belonging to Korilla BBQ.

196.    Accordingly, defendants LET Group and E. Song are liable to plaintiffs, jointly and severally, in an amount to be determined at trial, plus interest and costs.

197.    Such conduct was done in conscious disregard of plaintiffs' rights and undertaken to steal Korilla BBQ's valuable property, and punitive damages in an amount not less than 10 times the damages awarded should be assessed.

## AS AND FOR A FIFTH CAUSE OF ACTION
(*Transfer Order against LET Group, LLC and Edward Song*)

198.    Plaintiffs repeat and reallege all of the forgoing.

199.    Given that Korilla BBQ is the true owner of the Korilla Marks and that the assignments were made without authority or consideration, this Court should order that LET Group and E. Song reverse the assignments and transfer and turn over to Korilla BBQ all of LET Group's purported rights in and to the Korilla Marks, and to be responsible for all costs involved in doing so, jointly and severally, plus damages to be ascertained at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
(*Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing against Edward Song*)

200.    Plaintiffs repeat and reallege all of the forgoing.

201.    E. Song and Korilla BBQ had an agreement in place whereby E. Song, as Manager of Korilla BBQ, would execute his duties in the best interest of Korilla BBQ.

202.    Separately, E. Song agreed with the individual plaintiffs to operate Korilla BBQ in good faith and for the benefit of plaintiffs and E. Song.

20

203.    As alleged above, E. Song did not do that, instead taking affirmative steps to injure Korilla BBQ and the individual plaintiffs.

204.    E. Song's conduct was done without right or reason, recklessly and in bad faith.

205.    Accordingly, E. Song has breached his contract and contractual obligations to plaintiffs, alleged derivatively and individually, and is liable to plaintiffs in an amount to be awarded at trial, plus interest and costs.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (*Prima Facie Tort against Edward Song and David Im*)

206.    Plaintiffs repeat and reallege all of the forgoing.

207.    The conduct of E. Song and Im as alleged was undertaken intentionally and in bad faith, motivated by disinterested malevolence, and with the specific intent to harm plaintiffs and deprive them of their property.

208.    As a result, plaintiffs have been caused substantial and irreparable harm.

209.    This harm was or should have been expected by E. Song but was ignored and disregarded.

210.    Instead, he acted to further their own interests at plaintiffs' expense.

211.    As such, plaintiffs have been damaged, and E. Song is liable, under the theory of *prima facie* tort, in an amount to be determined at trial, plus interest and costs, but not less than $3 million.

212.    The conduct alleged was undertaken in conscious disregard of plaintiffs' rights so that punitive damages in the amount 10 times the amount of damages awarded should be assessed.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (*Breach of Fiduciary Duties against Edward Song and David Im*)

21

213.    Plaintiffs repeat and reallege all of the forgoing.

214.    E. Song and Im, as members and/or Manager of Korilla BBQ, owed the individual plaintiffs absolute fidelity and fiduciary duties in connection with operations and management of Korilla BBQ and its business.

215.    E. Song and Im, in bad faith, did not do so, instead acting in their own interest and against plaintiffs' interests.

216.    As such, E. Song and Im have breached their fiduciary duties to plaintiffs and are liable to them in an amount to be determined at trial but not less than $3 million, jointly and severally, plus interest and costs.

## AS AND FOR A NINTH CAUSE OF ACTION
*(Breach of Duties of Loyalty and Care against Edward Song and David Im)*

217.    Plaintiffs repeat and reallege all of the forgoing.

218.    E. Song and Im owed plaintiffs duties of loyalty, care, and obedience.

219.    Included in those duties were their obligation not to steal business opportunities, transfer away valuable business assets, compete with Korilla BBQ and mislead the individual plaintiffs in connection with that gross misconduct.

220.    But E. Song and Im did do all of those things, knowingly, and with the intent to injure plaintiffs and enrich themselves and their associates.

221.    As such, E. Song and Im have breached their fiduciary duties to plaintiffs and are liable to them in an amount to be determined at trial but not less than $3 million, jointly and severally, plus interest and costs.

## AS AND FOR A TENTH CAUSE OF ACTION
*(Unfair Business Practices against E. Song, Im, Chung, Korilla East Village Truck, Inc., White Tiger Named Korilla, LLC and LET Group, LLC)*

222.    Plaintiffs repeat and reallege all of the forgoing.

22

223.    Defendants E. Song, Im, Chung, Korilla East Village Truck, Inc., White Tiger Named Korilla, LLC and LET Group, LLC own and operate the businesses, stores and restaurants, and food trucks alleged herein.

224.    Each of these parties are knowingly engaged in ventures that employ the stolen assets and property of Korilla BBQ.

225.    Each of these parties have knowingly duped and mislead the public to believe that they are plaintiff Korilla BBQ.

226.    Each of these parties have taken substantial monies that were intended to be paid to Korilla BBQ and have been enriched by their fraud and misrepresentation.

227.    Each of these parties have violated New York General Business Law §§ 133 and 349.

228.    Each of these parties have violated New York Business Corporation Law § 301.

229.    Each of these parties has undertaken the unlawful conduct alleged herein through the misappropriation of Federal trademark registrations that belong to Korilla BBQ.

230.    The conduct of these parties has damaged the reputation of Korilla BBQ and its registered trademarks.

231.    Each of these parties have done this intentionally and with the knowledge that Korilla BBQ would be forced to close its business.

232.    The conduct of these parties was in manifest bad faith and designed to steal the business of Korilla BBQ.

233.    Accordingly, these parties are liable to Korilla BBQ for their unfair business practices, in an amount to be determined at trial, jointly and severally, together with interests and costs.

23

234.     The conduct of these parties was shocking and intended to deprive Korilla BBQ of its business and assets while enriching these defendants.

235.     This conduct has in fact destroyed Korilla BBQ and irreparably injured plaintiffs.

236.     As such, punitive damages should be awarded at trial, but not less than $25 million, jointly and severally.

WHEREFORE, plaintiffs demand that judgment be entered in their favor and against defendants, jointly and severally as alleged in each Cause of Action, as follows:

(i)     on their First Cause of Action, for an accounting, in an amount  to be determined at trial, plus interest;

(ii)     on their Second Cause of Action, for unjust enrichment, in an amount to be determined at trial, plus interest;

(iii)     on their Third Cause of Action, for declaratory relief, in an amount to be determined at trial, plus interest;

(iv)     on their Fourth Cause of Action, for conversion, in an amount to be determined at trial, plus interest; and for a punitive damages award of not less than 10 times the amount awarded or such other amount as the Court may determine;

(v)     on their Fifth Cause of Action, for a transfer order;

(vi)     on their Sixth Cause of Action, for breach of contract, and the breach of the covenant of good faith and fair dealing, in an amount to be determined at trial, plus interest;

(vii)     on their Seventh Cause of Action, for *prima facie* tort, in an amount to be determined at trial but not less than $3million, plus interest; and for a punitive damages award of not less than 10 times the amount awarded or such other amount as the Court may determine;

(viii)     on their Eighth Cause of Action, for breach of fiduciary duties, in an amount to be determined at trial but not less than $3 million, plus interest;

(ix)     on their Ninth Cause of Action, for breach of duties of loyalty and care, in an amount to be determined at trial but not less than $3 million, plus

24

interest; and

(x) on their Tenth Cause of Action, for unfair business practices, in an amount to be determined at trial, plus interest; and for a punitive damages award of $25 million or such other amount as the Court may determine;

together with plaintiffs' costs and expenditures in litigating this case, plus interest, jointly and

severally, and such other and further relief for plaintiffs and against defendants that the

Court deems just and proper.

Dated: February 27, 2017

THE SILBER LAW FIRM, LLC

By _____

Meyer Y. Silber
*Attorneys for Plaintiffs*
11 Broadway, Suite 715
New York, New York  10004
Tel.:  (212) 765-4567

25

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
 COUNTY OF NEW YORK
-------------------------------------------------------------------------X
STEPHEN PARK, THOMAS YANG, PAUL LEE and
ANDREW CHANG, all individually and on behalf of
KORILLA BBQ, LLC,

                              Plaintiffs,

       -against-

EDWARD SONG, DAVID IM, KORILLA BBQ, LLC
KORILLA EAST VILLAGE TRUCK, INC,
WHITE TIGER NAMED KORILLA, LLC,
LET GROUP, LLC  MOKBAR, LLC, MOKBAR II, LLC,
AEGIS 233 LLC, ESTER CHOI, HARDY CHUNG and
 YOUNG SUN SONG,

                            Defendants.

-------------------------------------------------------------------------X

Index No. 650186/2017

RESPONSE TO PLAINTIFFS'
SECOND DEMAND FOR
INTERROGATORIES

## DEFENDANT EDWARD SONG's RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND REQUEST FOR INTERROGATORIES

        Pursuant to the CPLR, Defendant EDWARD SONG ("Defendant") by and through

his undersigned attorneys, O'Donoghue PLLC, hereby respond and object to Plantiffs' First Request

for Interrogatories (the "Interrogatories"), as follows:

## GENERAL OBJECTIONS

        The following general objections apply to each Interrogatory and shall have the same

force and effect as if set forth in full in response to each individually numbered Interrogatory:

        1.     To the extent Defendant provides information in response to any

Interrogatory, it does so without conceding the materiality, admissibility, or relevance of the

Interrogatories, or responses to them.

        2.     Defendant reserves all objections to the use of any information produced.

All objections may be interposed by Defendant at the time of trial, or in connection with any other

procedure related to the subject matter of the Interrogatories, or as otherwise required by the applicable rules or by order of the Court.

3.      These responses are made subject to and without in any way waiving, but on the contrary reserving, the right to object to other discovery relating to the subject matter of Plaintiffs' Interrogatories.

4.      Defendant's responses herein (and any production of documents) are based upon and reflect the current state of its knowledge and are made to the best of its knowledge and without prejudice to Defendant' rights to utilize subsequently discovered information and to respond at the time of trial or hearing of a motion, subsequently discovered information or evidence relating to the proof of presently known material facts, and to produce all evidence, whenever discovered, relating to the proof of subsequently discovered facts.  These responses are also made subject to and without in any way waiving, but on the contrary reserving, Defendant's right to introduce, use or refer to information which it presently has, but which it has not yet had sufficient time to analyze and evaluate, as well as Defendant's right to amend or supplement its responses in the event that any information previously available is unintentionally omitted from any response. Defendant reserves the right to amend, supplement, modify, or withdraw these written responses and objections.

5.      Defendant will respond to the Interrogatories on the basis of the best information available to it at the time of gathering responsive documents and information, subject to the objections set forth below.  Defendant's responses herein shall not waive or prejudice any objections or privileges Defendant may later assert, and should not be read as acquiescence to production of documents or provision of information in other contexts.  Defendant hereby asserts all applicable privileges and protections from production or disclosure, and further reserves the right

to withhold and/or redact materials that are protected by the attorney-client privilege or work product doctrine or that are otherwise immune from production or disclosure.

6.      Defendant objects to the Interrogatories on the ground and to the extent that they exceed the scope of permissible discovery under and/or seek to impose obligations on Defendant beyond those imposed by the CPLR, the Local Rules of the Supreme Court of the State of New York County of New York, and any other Order or Individual Rule of this Court.

7.      Defendant objects to the extent that any Interrogatory seeks information that is not relevant to the claims or defenses of any party or not reasonably calculated to lead to the discovery of admissible evidence.

8.      Defendant objects to the Interrogatories on the ground and to the extent that the discovery sought is overly broad, unduly burdensome, compound, ambiguous, vague, oppressive, harassing, inapplicable, or requires unreasonable investigation.  Defendant object to the extent that any Interrogatory contains words or phrases that are confusing or lack sufficient certainty to permit response.  In his responses below, Defendant responds to the extent it understands the Interrogatories.

9.      Defendant objects to the extent any Interrogatory seeks information for periods of time in excess of the relevant time period encompassed by the subject matter and issues in this proceeding.

10.      Defendant objects to the extent that any Interrogatory calls for, or can be interpreted as calling for, legal conclusions, and to any discovery where disputed issues are assumed and the discovery is phrased in such a way as to be argumentative, prejudicial or improper.

11.      Defendant objects to the extent that any Interrogatory seeks information that is equally accessible to Plaintiffs or already within the possession, custody, or control of Plaintiffs,

including, but not limited to, documents that are in the possession, custody, or control of their attorneys.

12.     Defendant objects to each Interrogatory to the extent that it is redundant or duplicative of a prior discovery request, on the ground that it is overly broad and unduly burdensome.  Where an answer is reasonably responsive to more than one Interrogatory, Defendant reserve the right to respond only once.

13.     Defendant objects to the Interrogatories on the ground and to the extent that they incorporate, reference, or rely upon factual assumptions or characterizations which are incorrect, speculative or unsubstantiated.  Any information provided or production of or reference to documents by Defendant in response to any of the Interrogatories shall not be deemed an admission, concession, or acquiescence to the accuracy of any assumption or characterization incorporated within, referred to in, or relied upon in any Interrogatory.

14.     Defendant specifically reserves all objections as to the competency, materiality and admissibility of its documents or the subject matter thereof.  Any production of documents by Defendant in response to the Interrogatories does not constitute an admission or acknowledgement that such documents are relevant or admissible and is without waiver of, or prejudice to, Defendant's right later to assert any objection to (i) discoverability, competency, relevancy, materiality, privilege or admissibility of any documents produced pursuant to the Interrogatories; or (ii) the use of any such documents in this or any other proceeding.

15.     Defendant objects to the extent that any Interrogatory seeks information or documents protected by:  (a) the attorney-client communications privilege; (b) the work product doctrine; (c) rights of privacy and any other statutory or common law privilege; (d) seeks commercially sensitive, confidential and/or proprietary information; (e) the settlement privilege; or (f) any other applicable privilege or immunity.  Any inadvertent production of such a document does

not waive any such privilege or immunity with respect to that document.  Any production of such a document (whether or not inadvertent) does not waive any such privilege or immunity with respect to any other document or any subject.

16.    Defendant objects to the Interrogatories on the ground and to the extent that (i) they call for production of documents or seek information constituting, containing or reflecting non-public, personal, confidential, employment information of employees other than Plaintiff; and (ii) production would violate any rights or interests that employees may have in the privacy or confidentiality of their personal financial, and employment matters.

17.    Defendant objects to the Interrogatories on the ground and to the extent that they call for production of documents or seek information constituting, containing or reflecting non-public, personal or confidential business information.

18.    Defendant reserves the right at any time to assert additional objections to the production of information or documents as appropriate or to revise, supplement, amend, correct, add to, or clarify any of its responses and objections to the Interrogatories.  Defendant' responses and objections herein are based upon information currently known to Defendant, and any failure to object herein shall not constitute a waiver of any objection that Defendant may interpose as to any future supplemental response.

**19.    Defendant has rejected the Interrogatories as such seek to group "Companies" and "Korilla Companies" (Definitions, section 3 and 4) as if such were related entities. There is no legal connection between the companies named, and therefore no response may be made based on this improper assumption which is false and not in evidence. Defendant also rejected the demand sue to the definition of "Defendant" as not just Edward song, but employees, agents or representatives, for which Mr. Song cannot answer. Defendant makes this response solely due to the Order of the Court but objects to**

all such Interrogatories that seek information as such cannot be answered properly based on the incorrect assumption.

20.    Defendant further objects that "e-discovery" is outside the scope of the discovery order entered by the Court, and no such hardcopy documents responsive to this demand exist that have not been produced or are already in the possession of plaintiffs.

21.    Defendants further object to production of documents that cannot be relevant to any claim in this action as such documents can only be relevant to derivative claims which the plaintiffs have no entitlement to as a matter of fact or as a matter or law.

### RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES

Defendant hereby incorporates each of its general objections into its responses and objections to specific Interrogatories as if fully set forth therein.  Subject to and without waiving any of the foregoing general objections, Defendant state the following responses and objections to specific interrogatories:

1.  Edward Song.

2.  None.

3.  Objection. No intellectual property or trademark is owned by "Korilla BBQ LLC" and never has been owned by that entity. LET GROUP LLC has always owned the intellectual property which is well known to the plaintiffs. Plaintiff YANG, the only signatory plaintiff specifically waived any right to the intellectual property; the other plaintiffs never had any right to the intellectual property. Without waiving such objection, a Korilla entity is currently operating at 2 Metrotech in Brooklyn which is owned by Komissary LLC. Urbanspace Vanderbilt at 230 Park Avenue is owned by Komissary LLC  Kommissary LLC operates catering jobs and the food trucks. A Korilla operates at 672 Lexington Avenue in Manhattan owned by KOAST LLC. 3E LLC operates the US Open stall. AEGIS 233 LLC is no longer operational but operated a Korilla at 23 3rd Avenue in Manhattan and 55 Spring Street in Manhattan for a short time. KORILLA EAST VILLAGE TRUCK ("KEVT") INC. is no longer operational but it was a Korilla truck. The individual plaintiffs were also granted an oral license  by LET GROUP (possibly in writing in an email) to operate their food trucks as part of KORILLA BBQ LLC after Mr. Song was no longer part of the operations, but Mr. Song directly controlled the brand and quality control of the brand (set forth in emails that have been produced) and also was going to revoke the license, but the plaintiffs lost the

trucks and this was no longer necessary. The truck, upon information and belief, no longer operates.

4. Komissary LLC, Urbanspace Vanderbilt, KOAST and 3E are owned by William Song. AEGIS 233 LLC and KEVT were owned by HARDY CHUNG. The mailing addresses are above. To the extent telephone or other contact information is requested, such is not relevant for subpoena purposes (the reason for this demand) and is publically available.

5. The status of the entities is set forth in Paragraph 3. Edward Song has no ownership, equity or membership interest in any of these entities. LET GROUP LLC, owns and controls the trademarks and intellectual property of "Korilla" and Mr. Song as managing member of LET GROUP acts as an unpaid advisor and consultant to the above entities to ensure brand consistency and quality.  Because these are owned by William Song, the license agreement is oral; because AEGIS 233 LLC is a third-party, it had a formal agreement. As part of the control of the mark and the oral agreement between the entities, Mr. Song has the right to approve all marketing, branding, and other material aspects of Korilla, conduct quality control of the brand and the products and service, and can revoke the license for any violation at any time. Mr. Song exercises quality control over all aspects of the brand, including the use of the marks, and to ensure the licensee is using its best efforts on behalf of Korilla.

6. There is a written agreement with KORILLA BBQ LLC (the "Memorandum of Understanding") for use of the IP by that entity from LET GROUP LLC, in exchange for a 15% royalty. The Licensing Agreement to AEGIS 233 LLC speaks for itself, but no revenue was generated per the tax returns showing annual losses. For the other entities above, there are oral agreements for no royalty, flat fee, or cash value that LET GROUP allows the entities above to use the name, marks and logos it owns, subject to certain terms and

conditions as set forth above as regards quality of the food, service, locations and overall protection of the brand. The reason there is no revenue, profit, contingent payment or fixed payment for the use of the name is that LET learned from the AEGIS 233 LLC experiment that a brick and mortar restaurant cannot survive if it is paying a flat fee or royalties for use of a mark per a licensing agreement. There was no benefit to LET since there was never profit generated. LET would be bankrupting and closing the stores if it demanded the payments, which would negate the purpose of the license.  LET, as the sole owner of the brand, is trying to grow the brand but have no capital to open stores. In order to induce others to open stores with the Korilla name using their capital, LET  has made deals for those companies to use the name free for the sole consideration of increasing the value of the brand. There has never been any objection by any of the plaintiffs or any other person in the 7 years since the assignment was made, because at all times they knew the IP was owned by LET only, through LET. It was not until 2014, when it was raised that an error had been made by the trademark attorney in filing the mark under the wrong entity, that there was any question regarding LET's ownership, which was amended *nunc pro tunc.* LET has prosecuted the mark and defended its use locally and internationally. Only LET has paid for the marks to be filed, prosecuted, and created.

7.   None. The consideration for the use of the license is that the operator of the entities under the Korilla mark and name are furthering the expansion of the brand at no cost to LET GROUP LLC.

8.  No, Mr. Song was not aware of the cancellation (until this demand was made, he is now aware of it), which is done by the USPTO upon information and belief because that logo expired and was no longer in use.

Defendant, Edward Song, reserves the right to serve further and supplemental responses until the time of trial.  All responses are true to the best of Defendant's knowledge after a review of records regarding same.

Dated: August 15, 2018
New York, New York


_____/s_*Kevin Sean O'Donoghue*_____
KEVIN SEAN O'DONOGHUE
O'Donoghue PLLC
Attorneys for the Defendant
43 West 43 Street, Ste. 92
New York, NY 10036
646.280.6903

## VERIFICATION

**State of New York:**

               : SS:

**County of QUEENS**    :

EDWARD SONG having been duly sworn, deposes and says:

     I am a member or officer of the defendant corporations
KORILLA BBQ LLC, WHITE TIGER NAMED KORILLA,
LLC, LET GROUP LLC and an individual defendant in the
instant action and I have read the Response to the Plaintiff's
Second Request for Interrogatories. To the best of my
knowledge, the contents of this document are true, except as to
those matters herein which are alleged upon information and
belief, which I believe to be true through personal experience
and a review of the receipts and other records kept by my
corporation.

_____

                               **EDWARD SONG**

Sworn before me this
_15_ th day of _August_, 2018

_____

Notary Public

KEVIN SEAN O'DONOGHUE
Notary Public, State of New York
No. 01OD6192908
Qualified in Queens County
Commission Exp. 09/08/20__

# EXHIBIT D

## SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK

Park

-against-

Plaintiff(s),

Song

Defendant(s).

INDEX NO. 650186/17

IAS PART 54

**COMPLIANCE CONFERENCE ORDER**

On 4/5 , 20 18 , a conference was held in this case. The parties appeared as follows:

Plaintiff(s) Steven Park        by        pro se
Paul Lee
Thomas Yung , Andrew Chang

Defendant(s) _____ by        Kevin O'Donoghue
Thomas Kwan

The Court has determined that the Court's Case Management Order of _____, 20___ has not been complied with in that _____

_____

_____

_____

Accordingly, it is ORDERED that _____

_____

_____

_____

_____

Enter:

_____

_____
J.S.C.

Dated: _____

TS-13c (rev 2/1/93)

→ See attached →

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
-------------------------------------------------------------------X
STEPHEN PARK, THOMAS YANG, PAUL LEE and                    Index No.: 650186/2017
ANDREW CHANG, all individually and on behalf of
KORILLA BBQ, LLC,                                          **ORDER**

                                        Plaintiffs,

             -against-

EDWARD SONG, DAVID IM, KORILLA BBQ, LLC
KORILLA EAST VILLAGE TRUCK, INC, WHITE
TIGER NAMED KORILLA, LLC, LET GROUP, LLC
MOKBAR, LLC, MOKBAR II, LLC, AEGIS 233 LLC,
ESTER CHOI, HARDY CHUNG and YOUNG SUN
SONG,

                                        Defendants.
-------------------------------------------------------------------X
SHIRLEY WERNER KORNREICH, J.:

A discovery status conference was held on April 5, 2018. Plaintiffs appeared *pro se*;

defendants appeared by their counsel of record. The following is a summary of the court's

rulings on the parties' discovery objections.[1]

*All* of the parties' objections to their document demands are overruled. Despite express

warning from the court at the prior conference, the parties interposed objections that are

conclusory and lack "reasonable particularity [regarding] the grounds for any [such] objection."

*See* Commercial Division Rule 11-e(a)(ii). Having reviewed the demands, it is clear to the court

that they, for the most part, are clearly relevant to the claims pleaded in the complaint and that

most of the objections are utterly without merit. The court need not and will not prune the

parties' prolix improper discovery responses and, instead, summarily overrules them. *See*

---

[1] The court sustained a variety of objections to the parties' interrogatories that will not be
discussed herein. The focus of this order are those objections the court has overruled.

*Williams Real Estate Co. v Viking Penguin, Inc.*, 216 AD2d 27, 28 (1st Dept 1995), citing

*Bohlen Capital Holdings, S.A. v Standard Coal Co. N.V.*, 90 AD2d 476 (1st Dept 1982).

To be sure, any concern about undue burden is unfounded at this juncture, as the ESI

protocol, as always, will ensure proportionality. That defendants believe many of plaintiffs'

claims lack merit is not a basis to refuse to provide discovery. The complaint in this action was

filed on February 27, 2017. Defendants did not file a motion to dismiss until March 28, 2018,

more than a year after they filed an answer on March 21, 2017. While the court will consider the

merits of that motion when it is fully submitted – and to be sure, it is clear that some claims will

survive while others may at least need to be repleaded – discovery shall proceed on all pleaded

claims unless and until any claim is dismissed.[2] Contrary to what defendants contend, this case

is not obviously without merit (if the court thought so, it would have stayed discovery, as it often

does, until plaintiffs overcome the motion to dismiss). Moreover, there is no automatic stay of

discovery in the Commercial Division while a dispositive motion is pending. To the extent

defendants seek a protective order to avoid producing documents while the motion is pending,

that request is denied (though the court ***is not*** relieving plaintiffs of the obligation to respond to

all prongs of defendants' motion). Defendants ***shall not*** refuse to comply with the court's

discovery orders (such as the production ordered below) on the ground that their motion is

pending.

That being said, by April 27, 2018, defendants must produce: (1) all of the LLC

defendants' operating agreements (except for the MOKBAR LLCs), including any prior

versions; (2) all agreements concerning ownership or management of (a) the food trucks or

---

[2] The court, nonetheless, has limited some of the discovery (e.g., from the MOKBAR LLCs) on
claims that appear to be without merit.

2

restaurants owned by the non-MOKBAR LLCs or (b) any food truck or restaurant that has "Korilla" in its name (or on its website) or uses any trademark or logo with the name "Korilla" (even if such food trucks or restaurants are owned by LLCs that are not named as defendants); (3) all documents (including contracts, such as license agreements) concerning the ownership, transfer, or use of the "Korilla" name, trademark, or logo; and (4) monthly corporate (but not personal) bank statements, financial statements (from, e.g., QuickBooks), and tax returns of each non-MOKBAR defendant LLC from 2009 to the present (only, obviously, to the extent they exist). These production obligations extend to all sources of discovery within defendants' possession, custody, or control (including, e.g., lawyers, accountants, banks, or files of any non-party "Korilla" food trucks or restaurants).

Regarding plaintiffs' interrogatories, Song shall respond to: (1) the 19th interrogatory only as it pertains to the defendant LLCs; and (2) the 24th interrogatory, but only as it pertains to the non-MOKBAR defendant LLCs, and not the last prong concerning "the basis for revoking access." Regarding defendants' interrogatories, plaintiffs shall respond to the 8th and 9th interrogatories (and Yang shall clarify his response to the latter to read "use & own").

The parties shall be prepared to address all of the discussed ESI issues during the next telephone conference on April 19 at 5:00. They must sufficiently meet and confer beforehand. The court will rule on any disputed sources of ESI that a party does not want to have to review. However, if a party does not provide sufficient clarity about ESI (e.g., its location, when it was lost or deleted, etc.), the court may order a limited deposition on the issue. To the extent defendants prefer that plaintiffs obtain and review the old ESI from their prior third-party host,

they shall ensure plaintiffs have the requisite information and authorization to do so *prior* to the next call.

For the avoidance of all doubt, defendants shall not withhold any discovery on the ground that some or all of the currently operating food trucks or restaurants are owned by LLCs that either are not named defendants or in which plaintiffs are not members. All "Korilla" companies are fair game for discovery in light of plaintiffs' allegation that they have rights in the Korilla name, which they claim was wrongfully misappropriated from them and/or their business.

The foregoing is hereby SO ORDERED.

Dated: April 10, 2018

ENTER:

_____
J.S.C.

# EXHIBIT E

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. JENNIFER G. SCHECTER**
J.S.C.
*Justice*

PART 54

Index Number : 650186/2017
PARK, STEPHEN
vs.
SONG, EDWARD
SEQUENCE NUMBER : 007
ORDER TO COMPEL

INDEX NO. _____

MOTION DATE _____

MOTION SEQ. NO. _____

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). 159-169

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that ~~this motion is~~

Π's' motion to compel non-party William Song to respond to a so-ordered subpoena and to hold him in civil contempt for failing to do so is granted, without opposition, to the following extent: if William Song does not fully comply with the subpoena by 4/12/19, he will be held in civil contempt and forced to pay the reasonable attorney's fees spent by Π's in making this motion; and, if he still has not complied by 4/26/19, Π's may submit a proposed arrest warrant providing for his incarceration until such time that he complies with the subpoena. Π's shall serve a copy of this order on William Song by overnight mail by 4/5/19. Π shall notify the court of William Song's compliance with the 4/12 and 4/26 deadlines by filing letters, respectively, no later than 4/16/19 and 4/~~30~~ /19.

If the court does hold William Song in contempt, at that time, it will issue the requisite written finding that he did impair Π's' rights in this case by refusing to produce critical financial information.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: 4/3/19

**HON. JENNIFER G. SCHECTER**
J.S.C.
J.S.C.

1. CHECK ONE: .................................................. ☐ CASE DISPOSED    ☒ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☒ GRANTED  ☐ DENIED  ☐ GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: ................................................ ☐ SETTLE ORDER    ☐ SUBMIT ORDER
                              ☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

1 of 1

# EXHIBIT F

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
STEPHEN PARK, THOMAS YANG, PAUL LEE and
ANDREW CHANG, all individually and on behalf of
KORILLA BBQ, LLC,

                                    Plaintiffs,

Index # 650186/2017
~~JUDICIAL~~ SUBPOENA
DUCES TECUM

-against-

EDWARD SONG, DAVID IM, KORILLA BBQ, LLC
KORILLA EAST VILLAGE TRUCK, INC,
WHITE TIGER NAMED KORILLA, LLC,
LET GROUP, LLC MOKBAR, LLC, MOKBAR II, LLC,
AEGIS 233 LLC, ESTHER CHOI, HARDY CHUNG and
YOUNG SUN SONG,                    Defendants.
-----------------------------------------------------------------X

SO ORDERED

HON. JENNIFER G. SCHECTER
J.S.C.

~~The People of the State of New York~~

To: William Song, 2 MetroTech Center, Brooklyn, NY 11201

WE COMMAND YOU, that all business and excuses being laid aside, you and each of you *are required*
[ ] ~~appear and attend before The Honorable Schecter J.S.C at 60 Centre Street, New York, NY~~
~~10007 on the~~         ~~day of~~          ~~, 20~~        ~~at~~        ~~o'clock, in the~~
~~____ M, and at any recessed or adjourned date to give testimony in this action on the part of~~
~~Plaintiffs and that you bring with you, and produce at the time and place aforesaid, a certain~~

[ ] ~~to produce by~~          ~~20~~          ~~original documents for inspection~~
~~and copying at the place where such items are originally maintained, certain~~

[ ] ~~deliver by~~          ~~20~~          ~~to.~~

→ To produce to πs, on or before 9/12/18, by email to thomasjgang@gmail.com,
Complete and accurate copies of ~~certain~~ all: Operating and/or shareholder agreements,
incorporating and/or organizing documents, ownership/equity transfer documents, bank
statements, financial statements, all tax ~~statements~~, Department of Health registrations,
K-1 forms

~~insurance forms~~, proof of source of capital towards the equity investments into entities, and licensing agreements (email or written) for all entities you own or manage using the Korilla trademarks, including but not limited to Komissary LLC, KOAST LLC, and 3E LLC now in your *posession, custody,* ~~custody, and all other deeds, evidences and writings, which you have in your custody or power,~~ *of control.* ~~concerning the premises~~.

Failure to comply with this subpoena is punishable as a contempt of Court and shall make you liable to the person on whose behalf this subpoena was issued for a penalty not to exceed fifty dollars and all damages sustained by reason of your failure to comply.

WITNESS, Honorable Schecter one of the Justices of said Court, at 60 Centre Street, New York, NY 10007 the _____ day of _____, 20____.

Dated: August 16, 2018

_____

Plaintiff, Pro se

Thomas Yang

thomasjyang@gmail.com

ANN MARIE SAMUEL
Notary Public - State of New York
NO. 01SA6174201
Qualified in Kings County
My Commission Expires Sep. 17, 2019

# EXHIBIT G

# MORRISON TENENBAUM

MORRISON-TENENBAUM PLLC, ATTORNEYS-AT-LAW M-T-LAW.COM
87 WALKER STREET  2ND FLOOR  NEW YORK  NY  10013
PHONE 212.620.0938   FAX 646.998.1972

June 24, 2019

**VIA EMAIL**
Samuel Goldman
200 Park Avenue; Suite 1700
New York, NY 10166

### Re:  Park et al. v. Song et al., Index No. 650186/2017

Dear Mr. Goldman,

     I am in receipt of your multiple emails and letters requesting additional discovery. On May 14, 2019 Hon. Schechter ordered my client to produce bank statements, financial statements, and tax returns by May 30, 2019. On May 30, 2019 my office complied with the Judge's orders and provided the bank statements for Koast LLC, Komissary LLC, Aegis 42 LLC, 3E LLC, and Grand Coast LLC as well as the Food Service Establishment Permits for Komissary LLC, Grand Koast LLC, and Koast LLC, and the leases for Koast LLC, Grand Koast LLC, and Aegis 42 LLC. As you can see, we have turned over everything in our client's possession and are in full compliance with the Judge's orders as we provided more than what was required of us. Please note that no other financial statements exist, and an extension was granted for the filing of the 2018 Tax returns. The tax returns will be provided as soon as they are filed. I hope this letter aids you in seeing that we are in full compliance with what the Judge has required of us.

Very Truly Yours,

Lawrence Morrison, Esq.

# EXHIBIT H

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

HON. JENNIFER G. SCHECTER

**PRESENT:** _____ J.S.C.     PART _54_

_Justice_

Index Number : 650186/2017
PARK, STEPHEN

vs.

SONG, EDWARD

SEQUENCE NUMBER : 009

AMEND COMPLAINT

INDEX NO. _____

MOTION DATE _____

MOTION SEQ. NO. _____

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _230-234_

Answering Affidavits — Exhibits _____ | No(s). _255-263_

Replying Affidavits _____ | No(s). _266-281_

Upon the foregoing papers, it is ordered that this ~~motion is~~

MOTION IS DECIDED IN ACCORDANCE
WITH ACCOMPANYING MEMORANDUM
DECISION AND ORDER

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: _9/5/19_                                              _____, J.S.C.

HON. JENNIFER G. SCHECTER
J.S.C.

1. CHECK ONE: ....................................................... ☐ CASE DISPOSED      ☒ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☐ GRANTED  ☐ DENIED  ☒ GRANTED IN PART  ☐ OTHER

3. CHECK IF APPROPRIATE: ............................................... ☐ SETTLE ORDER      ☐ SUBMIT ORDER

☐ DO NOT POST      ☐ FIDUCIARY APPOINTMENT      ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
------------------------------------------------------------------X
STEPHEN PARK, THOMAS YANG, PAUL LEE and          Index No.: 650186/2017
ANDREW CHANG, individually and on behalf of
KORILLA BBQ, LLC                                 **DECISION & ORDER**

                          Plaintiffs,

                  -against-

EDWARD SONG, DAVID IM, KORILLA EAST
VILLAGE TRUCK, INC., WHITE TIGER NAMED
KORILLA, LLC, LET GROUP, LLC, AEGIS 233 LLC,
and HARDY CHUNG,

                          Defendants,

                  -and-

KORILLA BBQ, LLC,

                          Nominal Defendant.
------------------------------------------------------------------X
JENNIFER G. SCHECTER, J.:

Plaintiffs move for leave to file a proposed first amended complaint (Dkt. 233 [the

PFAC]). Defendants oppose the motion. The motion is granted in part.

**Background**

This case concerns the parties' alleged competing interests in Korilla BBQ, LLC

(the Company) and its intellectual property. The relevant background is extensively set

forth in the court's October 10, 2018 decision on defendants' motion to dismiss the

original complaint (Dkt. 138 [the MTD Decision]). Familiarity with that decision is

assumed.[1]  In short, the parties dispute, among other things, who among them are

------------------------

[1] "The claims which survived are the **First**, for an accounting as to the Company against Song;
the **Sixth**, for breach of the Company's operating agreement against Song; the **Eighth**, for breach
of fiduciary duties against Song; the **Ninth**, for breach of the duty of care against Song; and the

members of the Company; whether the Operating Agreement governs and, if so, which version is genuine; and, most importantly, whether LET's ownership of the Company's trademark is proper.[2]

Contrary to defendants' arguments, LET's ownership of the trademark does not defeat plaintiffs' ability to recover. First, Park alleges that in 2009, when he and Edward jointly started the Company, the Company lacked any written agreement (*see* PFAC ¶ 31). Park claims that they jointly developed the Korilla name and the tiger logo in 2009 and that they built the first Korilla food truck together in 2010 (*see id.* ¶¶ 28-29).[3] Thus,

---

**Tenth**, for trademark infringement in breach of (GBL) § 360-k and The Lanham Act against (Song), Im, Chung, (Korilla East, White Tiger, and Aegis 233), and for use of a deceptively similar name in violation of (BCL) § 301(a)(2) against (Korilla East, White Tiger, and Aegis 233)" (Dkt. 232 at 8 [emphasis in original]). Capitalized terms not defined herein have the same meaning as in the MTD Decision. That said, going forward, the court refers to Edward Song as Edward to distinguish him from his brother, William. The court also refers to Aegis as "Aegis 233" to distinguish it from Aegis 42, LLC. It should be noted that revelation that the Company was (but is no longer) a 10% minority member of Aegis 233 does not make what Edward did with Aegis 233 innocuous. Regardless of whether entire fairness scrutiny applies (it would if Aegis 233 paid LET a fee to license the trademark), the allegation that the Company's 10% distributions were diverted to Edward's father, Byung Keun Song, makes what happened with Aegis 233 relevant even if Edward lacked any interest in Aegis 233.

[2] There currently is no declaratory judgment claim before the court, nor is the court permitting plaintiffs to assert such a claim. Defendants' previous efforts to seek a declaration as to their ownership of the trademark were rejected as procedurally improper because the court cannot grant summary judgment on an unpleaded claim raised in a discovery cross-motion. If defendants seek a formal declaration as to the current ownership of the trademark, they may assert such a counterclaim when they answer the amended complaint. That said, such a declaration would be academic if plaintiffs prevail on their claim that the trademark should be transferred back to the Company.

[3] While Edward denies this, the truth will turn on the witnesses' credibility and cannot be determined without a trial (*see also* Dkt. 277 [start-up projections indicating that original equity split was that Edward and Park respectively owned 81.99% and 21.76%]). While the equity split later changed once the Company was formed and the other members joined, the start-up projections, among other documents, indicates that Park was more than a mere employee.

2

Park plausibly alleges that the Company's trademark was property of their joint venture, and then became property of the Company once it was formed. Indeed, the trademark was originally registered as owned by the Company (*see* Dkt. 258 at 3). So when Edward later formed an LLC– LET– in which he did not make Park (or the Company) a member, and made the unilateral, undisclosed decision to transfer the trademark to LET (*see id.* at 6), that was allegedly a breach of Edward's fiduciary duty to the Company. Basically, Edward allegedly stole the trademark. That is why he, alone, has been able to derive the benefits of the other Korilla-branded restaurants.

Moreover, after the Company was formed,[4] the parties executed the Operating Agreement, which required the trademark to be held in the Company's name (*see* MTD Decision at 5-6). While defendants contend the MOA supposedly permits LET to own the trademark, it says no such thing (*see id.* at 6-7).[5]

For these reasons, defendants' primary defense to this action – that Edward's actions in cutting plaintiffs and the Company out of other Korilla-branded restaurants was permissible because the Company has no rights in the trademark – turns on whether the finder of fact believes that Edward started the Company on his own with Park being a

---

Regardless, at this stage, Park's allegations are assumed true and have not been refuted with any conclusive documentary evidence.

[4] The Company is a New York LLC. Apparently, Edward formed an identically named LLC in Delaware in 2009, but that entity was never used and is not at issue in this case (*see* PFAC ¶ 33).

[5] Because the Operating Agreement and the MOA appear to have been drafted by Edward, even if they were considered ambiguous about the ownership of the trademark, such ambiguity could be construed against Edward (*see 327 Realty, LLC v Nextel of N.Y., Inc.*, 150 AD3d 581, 582 [1st Dept 2017]).

mere employee or if the two of them jointly formed the Company.[6]  And even if Edward

proves the former, the terms of the Operating Agreement may still defeat his claim.

Other primary issues in this case include the determination of which of the

plaintiffs are members of the Company[7] and the truth about Edward's involvement with

other Korilla-branded restaurants.  The PFAC seeks to expound on the latter issue.

---

[6] Defendants also have suggested that it was within Edward's authority as manager under the Operating Agreement to transfer any of the Company's property to whoever he wished in his sole discretion.  But obviously, if the trademark was the Company's property, Edward lacked the right to transfer it to LET for no consideration.  That would be corporate waste.  Defendants cannot seriously be suggesting that a standard provision in an operating agreement giving an LLC's manager control over the LLC's assets is a license to permit theft.  To be sure, if all Edward did was license the trademark to unaffiliated restaurants seeking to run Korilla-branded businesses, that would be a decision subject to business judgment deference (but not if the license fee was paid to LET instead of the Company).  Indeed, even if Edward had an interest in those restaurants, he could still avoid liability if he could prove those arrangements were entirely fair to the Company and its members.  However, there is no standard of review under which a manager can license a business's intellectual property and keep all the licensing fees for himself, instead of remitting them to the company.  That is exactly what is alleged here.  Of course, if Edward can convince a jury that he really was the original, sole rightful owner of the trademark, and that it was not property of the original joint venture or later became property of the Company under the Operating Agreement, much of what Edward is alleged to have done will not give rise to liability (though he may not be absolved of his alleged theft and for other alleged instances where he harmed the Company).  However, if Park convinces the jury that his account is more believable, Edward could be held personally liable for all profits associated with the trademark that were not remitted to the Company.  In that regard, defendants have contended that Edward has not made any (or at least not significant) money on the trademark because the other Korilla-branded restaurants have not been profitable.  However, plaintiffs have not yet received all of those restaurants' financial records, so this assertion has yet to be tested.

[7] Plaintiffs previously submitted documentary evidence in which Edward appears to admit the percentage interest owned by plaintiffs obtained due to their monetary investment in the Company (see MTD Decision at 3 n 6).  While the failure by some of them to sign the Operating Agreement is not entirely irrelevant (though if their investment predated the Operating Agreement and Edward subsequently admitted they are members, his unilateral insistence that they sign an agreement may render it unenforceable), defendants themselves note that there are questions as to whether the Operating Agreement is valid.  If that is the case, Edward's defense based on what he believes are favorable provisions of the Operating Agreement would be unavailing.  Regardless, since the Operating Agreement does not appear to materially deviate from the default fiduciary duties applicable to the parties' conduct, it is not clear that questions concerning it authenticity and enforceability will prove to be material.

4

## The PFAC

The PFAC seeks to add: (1) Eric Yu, a member of the Company, as a plaintiff;[8] (2) Byung Keun Song (Byung Keun), William Song (William), "William Edward Song,"[9] Aegis 42, LLC (Aegis 42), Grand Koast LLC (Grand Koast), Koast LLC (Koast), Kommissary LLC (Kommissary), and 3E LLC (3E) as new defendants; (3) repleaded claims against Young Sun Song (Young Sun) and Esther Choi;[10] (4) John Doe defendants, representing other unknown Korilla-branded restaurants and their owners;[11] and (5) new factual allegations and causes of action based on discovery.

Discovery has revealed that since 2014, Edward allegedly operated at least 10 additional Korilla businesses, including: (1) a restaurant at 23 3rd Avenue in Manhattan, owned by Aegis 233 (which is now closed); (2) a restaurant at 55 Spring Street in Manhattan, purportedly owned by Aegis 233 (also now closed); (3) a restaurant at 2 Metrotech Center in Brooklyn, owned by Aegis 42 and/or Kommissary; (4) a restaurant at 230 Park Avenue in Manhattan, owned by Kommissary and/or Grand Koast; (5) a

---

[8] There is no dispute as to the propriety of Yu being added as a plaintiff because the court already granted leave to do so, albeit by May 1, 2019 (see Dkt. 174). Since Yu's addition to this case does not materially affect its scope, and likely only necessitates his deposition, there is no prejudice in adding him at this time. The court agrees with plaintiffs that making one omnibus motion for leave to amend was more efficient than moving in piecemeal fashion.

[9] Plaintiffs claim that "William Edward Song" is an alias used by Edward to disguise his involvement in the other restaurants, supposedly by impersonating his brother. Regardless of whether he used an alias, he is a party to this action. Naming the alias is unnecessary.

[10] The claims against them were dismissed without prejudice (see MTD Decision at 1, 23).

[11] For instance, plaintiffs recently discovered that Jin Woo Park, who defendants represented was merely a bookkeeper of Korilla East, was actually a "partner" (see Dkt. 272 at 3), and thus plaintiffs have indicated they will be seeking to substitute him for John Doe No. 1 (see Dkt. 265 at 7).

5

restaurant at 672 Lexington Avenue in Manhattan, owned by Koast (6) a food truck owned by Korilla East (or allegedly some other unknown company); (7) a pop-up restaurant at the U.S. Open, owned by 3E; (8) a pop-up restaurant at the Javits Center; (9) a pop-up restaurant at the New York Public Library and/or Bryant Park; and (10) a pop-up restaurant at Madison Square Park (*see* Dkt. 232 at 9-10).

Plaintiffs allege that these new restaurants are really owned and controlled by Edward, who allegedly has been using his family members, such as his brother William, as straw owners to conceal from plaintiffs that he really runs these companies.[12] Edward denies this, claiming that he merely, through LET, licensed the ability to operate these restaurants to his family members. And in any event, according to Edward, if LET legitimately has the right to own the trademark, none of what these other Korilla-branded restaurants are doing is improper, regardless of who owns and operates them.

The PFAC seeks to assert causes of action for: (1) an equitable accounting of all the Korilla-branded businesses from all defendants other than Choi; (2) breach of the

---

[12] On April 10, 2018, Edward was ordered to produce all financial records within his possession, custody or control of any Korilla restaurant (Dkt. 68 at 4). Edward refused to produce records for the other Korilla restaurants on the ground that he does not really own or operate them and, thus, does not have the practical ability to produce their records. By order dated July 30, 2019, the court indicated that the validity of that position has been seriously called into question (*see* Dkt. 235 at 4-5). For instance, in applying to open a bank account for 3E, Edward swore, under penalty of perjury, that he was a member of that company (*see* Dkt. 271). This suggests his representations to the court about only being a consultant of the other business and that he lacked the ability to produce their documents were false. Nonetheless, based on the leave to amend granted here, plaintiffs should be able to obtain in party discovery much (if not all) of what Edward has refused to produce (i.e., since the entities that own the restaurants are now defendants, they obviously can produce their records). This will require an extension of fact discovery. The court will withhold ultimate judgment on whether Edward's position as to the scope of what was within his possession, custody or control was accurate until the record can be more fully developed. If it is definitively proven that Edward misrepresented his involvement in those restaurants, plaintiffs may renew their sanctions motion (*see* Dkt. 235 at 5).

6

Operating Agreement, asserted directly against Edward; (3) breach of the Operating Agreement, asserted directly against Im; (4) breach of fiduciary duty, asserted derivatively against Edward; (5) breach of fiduciary duty, asserted directly against Edward; (6) breach of fiduciary duty, asserted derivatively against Im; (7) breach of fiduciary duty, asserted directly against Im; (8) aiding and abetting breach of fiduciary duty, asserted derivatively against William, "William Edward Song," Byung Keun, Young Sun, Choi, Chung, Korilla East, White Tiger, LET, Aegis 233, Aegis 42, Grand Koast, Koast, Kommissary, 3E, and the John Doe defendants; (9) "misappropriation of intellectual property, including trademarks and trade secrets," asserted derivatively against all defendants;[13] (10) constructive trust, asserted derivatively against all defendants; (11) common law trademark infringement, asserted derivatively against all defendants; (12) unfair and deceptive trade practices under GBL § 349, asserted derivatively against all defendants; (13) unfair competition under GBL § 133, asserted derivatively against all defendants; (14) common law unfair competition, asserted derivatively against all defendants; (15) trademark infringement under the Lanham Act, asserted derivatively against all defendants; and (16) a declaratory judgment that the Company owns the Korilla trademark.

## Discussion

Leave to amend should be granted freely unless the proposed amendment is clearly devoid of merit or would cause undue prejudice (*McGhee v Odell*, 96 AD3d 449,

---

[13] This cause of action, based on "theft of the Company's intellectual property" including its trademark, conflates many different claims (*see* PFAC ¶ 269). Misappropriation of trade secrets is different than conversion and is different from trademark infringement (under the common law or the Lanham Act). Regardless, this claim is clearly devoid of merit.

7

450 [1st Dept 2012]). There is no prejudice here.[14] Many of the claims the PSAC seeks

to add to this action, however, are clearly devoid of merit.[15]

The proposal to extend the equitable accounting claim beyond the Company was

already rejected (*see* MTD Decision at 13).[16] Unlike with the Company, for which it is

alleged that the parties' failure to record cash revenues necessitates an accounting, no

such allegation is made regarding the other Korilla-branded restaurants. In any event,

even if the trademark should have belonged to the Company, an award of monetary

damages in the form of lost profits is sufficient to compensate plaintiffs (*see Unitel*

*Telecard Distribution Corp. v Nunez*, 90 AD3d 568, 569 [1st Dept 2011]). The same is

true of plaintiffs' proposed claim for a constructive trust (*see AQ Asset Mgmt. LLC v*

*Levine*, 154 AD3d 430, 431 [1st Dept 2017]).

The proposed fifth cause of action, a <u>direct</u> claim, alleges that Edward breached

"his fiduciary duties to Plaintiffs by deliberately putting the Company out of business and

causing them to lose their shares" (PFAC ¶ 246). This is not a viable claim. Even

overlooking that there are no "shares" (there are membership interests in the LLC),

---

[14] Defendants do not explain how permitting leave to amend at this time would hinder preparation of their defense or that the timing of the amendment would prevent them "from taking some measure in support of (their) position" (*see Kimso Apartments., LLC v Gandhi*, 24 NY3d 403, 411 [2014]).

[15] To the extent that plaintiffs merely seek to add additional factual allegations to claims that survived the prior motion to dismiss, defendants do not dispute that plaintiffs are permitted to conform their pleadings to the proof.

[16] After the MTD Decision was issued, the court determined that it would be premature to immediately order an accounting. Instead, the court anticipates ordering an accounting after the close of fact discovery so the parties have the benefit of full financial disclosure to lodge objections, which will be resolved at trial.

8

plaintiffs did not "lose" them. Rather, plaintiffs are complaining that their membership interests were devalued (and possibly made worthless) due to Edward's actions. This is a quintessential derivative claim (*see Serino v Lipper*, 123 AD3d 34, 41 [1st Dept 2014]). It is subsumed in the derivative claims for breach of the Operating Agreement and breach of fiduciary duty that were already sustained.[17]

Nor is the proposed <u>direct</u> claim against Im for breach of the Operating Agreement viable. To be sure, though Im does not have fiduciary duties as a non-managing minority member of the Company – and thus the proposed claims to that effect also are not permitted (*see* MTD Decision at 13) – he is still bound by the Operating Agreement, which, in section 3.4, prohibits members from engaging in another business that sells similar Korean food (*see id.* at 4 n 7). Im's alleged involvement with the store on 3rd Avenue states a claim for breach of this provision. However, the claim is only pleaded directly (*see* PFAC at 31). The enumerated alleged breaches (*see id.* at 32) all harm the Company and not any of its members uniquely. Thus, it is not a direct claim.

The new claims for aiding and abetting breach of fiduciary duty are permitted only against the entities that allegedly own the other Korilla-branded restaurants, William, Chung, Byung Keun, and Choi. These entities plausibly provided substantial assistance to Edward's alleged scheme of diverting new Korilla opportunities away from the Company (*see Goldin v TAG Virgin Islands, Inc.*, 149 AD3d 467, 468 [1st Dept 2017]). William, allegedly, is either actually running some of the companies or is serving as a

---

[17] This action may still be maintained despite the fact that the Company, a New York LLC, is no longer active (*see* LLC Law § 703[b]). Indeed, plaintiffs' prior motion to revive the Company was denied without prejudice (*see* Dkt. 176) and may later be renewed (assuming, of course, such an application actually addresses the Operating Agreement's governing provisions).

9

straw owner for Edward, either of which may be sufficient to establish substantial assistance. Chung, likewise, may be held liable due to his involvement with Aegis 233. Plaintiffs further plead that Byung Keun and Choi had substantial involvement with other Korilla-branded restaurants (*see, e.g.*, PFAC ¶¶ 12, 16). While Edward disputes their level of involvement, plaintiffs have alleged enough to warrant discovery about the true nature of their role with the restaurants. The claims, therefore, are not clearly devoid of merit.

By contrast, the proposed claims against Young Sun are still insufficient. That she merely tried to provide Edward with financial assistance is not enough. Aiding and abetting liability does not extend to a mere lender of a company engaging in unfair competition. Moreover, to the extent plaintiffs complain that Edward wrongfully distributed the Company's money to his family members, that is a claim properly asserted (as is already the case) against Edward for breach of his fiduciary duties. Whether Edward bought himself a car with that money or his mother a house is of no moment since money is fungible.

Regarding the claims based on trademark infringement and the related wrongful competition claims, such claims are clearly devoid of merit because LET is the current owner and registrant of the trademark. To be sure, that fact itself is the basis of plaintiffs' well pleaded claims for breach of contract and breach of fiduciary duty. However, a trademark infringement claim may only be asserted by the registrant of the mark (15 USC § 1114[1]; *see Prince of Peace Enterprises, Inc. v Top Quality Food Mkt., LLC*, 760

10

FSupp2d 384, 391 [SDNY 2011].[18] Plaintiffs, therefore, may not assert these claims

against the new defendants.[19]

      Accordingly, it is

---

[18] The PFAC does not cite the actual section of the Lanham Act upon which the claim is based, an omission the court previously overlooked while plaintiffs were *pro se* (*see* MTD Decision at 22). The best the court can divine is that this claim is for wrongful use of the trademark, causing consumer confusion (*see* PFAC ¶¶ 304-05). The PFAC does not purport to assert a claim under 15 USC § 1120 for fraudulent registration (*see Sik Gaek, Inc. v Yogi's II, Inc.*, 682 F Appx 52, 54 [2d Cir 2017]). That said, for the first time in reply, plaintiffs note that the first to use the trademark owns it and that a trademark must be assigned with the entire business (Dkt. 265 at 15; *see Berni v Intl. Gourmet Rests. of Am., Inc.*, 838 F2d 642, 646 [2d Cir 1988] ["the transfer of a trademark or trade name without the attendant goodwill of the business which it represents is, in general, an invalid, 'in gross' transfer of rights"], citing 15 USC § 1060; *see also* 3 McCarthy on Trademarks and Unfair Competition § 18:2 [5th ed.]). It is not clear that either of these principles defeats LET's claim to the trademark. Either the alleged joint venture or Edward's sole proprietorship was the first to use the mark, followed by the Company, which was the first to register it. It was registered by LET after Edward transferred it and the associated goodwill from the Company (*see* Dkt. 258 at 6). Once the Company was no longer a going concern, the entirety of LET's business was to license the trademark to restaurants wanting to operate under the Korilla brand. Plaintiffs do not cite any authority for the proposition that a trademark cannot be held by a company whose sole purpose is to license or franchise a restaurant chain. Indeed, as with the PSAC, this portion of the reply brief does not cite any federal authority (*see* Dkt. 265 at 15). Nonetheless, as discussed, this issue is academic if Edward's transfer of the mark from the Company to LET was wrongful. In that case, the remedy would be an injunction requiring him to transfer it back. To the extent plaintiffs wish to pursue this issue further, they may seek leave to amend with a proposed pleading that cites the relevant statutes and a brief that cites relevant caselaw.

[19] These claims were permitted to be asserted against the original defendants based on the more limited arguments made on the original motion to dismiss. Defendants do not contend the court overlooked any of its arguments, nor will the court *sua sponte* grant renewal based on this motion. Defendants may seek to trim these claims on summary judgment. Dismissal of the original trademark claims, however, would not materially affect the scope of this case (e.g., since attorneys' fees are otherwise recoverable on the derivative claims). Likewise, the fact that the Company is not an active business likely renders academic the question of whether the other Korilla-branded restaurants use the name Korilla. As defendants correctly contend, they cannot be wrongfully or deceptively competing with a food truck that does not exist, nor is their current existence the reason the old food truck went out of business (though, to be sure, that allegedly was due to Edward's conduct). While the Company has valid claims that it is entitled to the profits from these other businesses, it cannot plausibly claim that they are actually competing with it. Of course, their current existence may prove quite beneficial to plaintiffs if they prevail on their fiduciary duty claims. Simply put, this case is about theft of intellectual property and diversion of corporate opportunities, not wrongful competition.

11

ORDERED that plaintiffs' motion for leave to amend is granted only to the extent

that, within one week, they may file a first amended complaint adding Yu as a plaintiff

and containing only: (1) the claims permitted by the MTD Decision; (2) all of the factual

allegations in the PFAC; and (3) a new derivative cause of action for aiding and abetting

breach of fiduciary duty against William, Byung Keun, Choi, Chung, Korilla East, White

Tiger, LET, Aegis 233, Aegis 42, Grand Koast, Koast, Kommissary, 3E, and the John

Doe defendants; and plaintiffs' motion is otherwise denied; and it is further

ORDERED that this action shall now bear the following caption:

-----------------------------------------------------------------------X
STEPHEN PARK, THOMAS YANG, PAUL LEE,
ANDREW CHANG, and ERIC YU, individually and
on behalf of KORILLA BBQ, LLC

                         Plaintiffs,

           -against-

EDWARD SONG, DAVID IM, KORILLA EAST
VILLAGE TRUCK, INC., WHITE TIGER NAMED
KORILLA, LLC, LET GROUP LLC, AEGIS 233 LLC,
HARDY CHUNG, BYUNG KEUN SONG, WILLIAM
SONG, ESTHER CHOI, AEGIS 42, LLC, GRAND
KOAST LLC, KOAST LLC, KOMMISSARY LLC,
3E LLC, and JOHN DOES 1 THROUGH 10,

                         Defendants,

           -and-

KORILLA BBQ, LLC,

                         Nominal Defendant.
-----------------------------------------------------------------------X; and it is further

12

ORDERED that plaintiffs shall serve a copy of this order with notice of entry on the County Clerk and the Clerk of the General Clerk's Office (which may be done electronically), who are directed to mark the court's records to reflect the parties being added.

Dated: September 5, 2019                    ENTER:

_____
Jennifer G. Schecter, J.S.C.

13

# EXHIBIT I

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------------x
STEPHEN PARK, THOMAS YANG, PAUL LEE and
ANDREW CHANG and ERIC YU, all individually and on behalf
of KORILLA BBQ LLC,

                            Plaintiffs,

           -against-

EDWARD SONG, DAVID IM, KORILLA EAST VILLAGE
TRUCK, INC., WHITE TIGER NAMED KORILLA, LLC, LET
GROUP LLC, AEGIS 233 LLC, HARDY CHUNG, BYUNG
KEUN SONG, WILLIAM SONG, , ESTHER CHOI, AEGIS 42,
LLC,
GRAND KOAST LLC, KOAST LLC, KOMMISSARY LLC, 3E
LLC, and JOHN DOES 1 THROUGH 10,

                            Defendants,
           -and-

KORILLA BBQ LLC,

                            Nominal Defendant.
--------------------------------------------------------------------------x

**INDEX NO. 650186/2017**

**FIRST AMENDED AND
RESTATED COMPLAINT**

       Plaintiffs Stephen Park, Thomas Yang, Paul Lee, Andrew Chang and Eric Yu, all

individually and on behalf of Korilla BBQ LLC (the "Company"), by their attorneys, Samuel

Goldman & Associates, for their First Amended Complaint against Defendants Edward Song

("Edward"), David Im ("Im"), Korilla East Village Truck, Inc. ("KEVT"), White Tiger Named

Korilla, LLC, LET Group LLC, Aegis 233 LLC, Hardy Chung ("Chung"), Byung Keun Song

("Byung Keun"),   William Song ("William"), Esther Choi ("Choi"), Aegis 42, LLC, Grand

Koast LLC, Koast LLC, Kommissary LLC, 3E LLC, and John Does 1 Through 10, complain and

allege as follows:

## I.    Introduction

1.    Plaintiffs bring this action against Edward and the other Defendants for, among other things, (a) Edward's looting and deliberate destruction of Korilla BBQ LLC, of which Edward was the managing member and Plaintiffs were members, (b) Edward' outright misappropriation of the entire Korilla business, including its trademarks, trade secrets and other intellectual property and continuation of the Korilla business in new entities in which Korilla BBQ LLC and Plaintiffs had no interest,[1] (c) the other Defendants participation in and aiding of Edward's looting, misappropriation of Korilla BBQ's intellectual property, including its KORILLA and KBBQ trademarks, and misappropriation of Korilla BBQ LLC's business opportunities, and (d) Defendants' operation of multiple new Korilla businesses using Korilla BBQ LLC's intellectual property in violation of Korilla BBQ LLC's rights("Knockoff Korilla Businesses").  Plaintiffs also seek redress against those individuals and entities who knowingly participated in and aided Edward in his breaches, and who wrongfully operated Korilla businesses using Korilla BBQ LLC's marks and intellectual property.

2.    As a result of Defendants' deliberate, wanton, and reckless conduct, Korilla BBQ LLC has been destroyed and Plaintiffs have lost their entire investments in it, as well as the livelihoods they earned from its operation. They and Korilla BBQ LLC have also lost all of the profits that have been earned by the Knockoff Korilla Businesses and entities that have been using their trademarks and other intellectual property without authorization.

## II.    Parties

3.    Derivative Plaintiff and Nominal Defendant Korilla BBQ LLC is a New York limited liability company formed on June 29, 2010, with its headquarters in Queens, New York.

---

[1] Plaintiffs have learned in discovery that Korilla BBQ LLC was given a 10% equity interest in Aegis 223 LLC, an entity set up by Edward to operate a Korilla BBQ business at 23 3rd Avenue, but that the distributions payable to Korilla BBQ were paid instead to Edward's father Byung Keun Song.

Korilla BBQ LLC was formed to own and operate the Korilla food business, including without limitation the sale of Korean-Mexican barbeque and grilled meats from food trucks, restaurants and catering facilities. Korilla BBQ LLC was dissolved by Edward Song, who was its manager, on May 8, 2017, while this lawsuit asserting claims by Korilla BBQ LLC against him was pending.

4.    Plaintiff Stephan Park is a resident of Queens, New York and a member of Korilla BBQ LLC, owning a 12.57% equity interest in Korilla BBQ LLC.

5.    Plaintiff Thomas Yang is a resident of Brooklyn, New York and a member of Korilla BBQ LLC, owning a 14.73% equity interest in Korilla BBQ LLC.

6.    Plaintiff Paul Lee is a resident of Queens, New York and a member of Korilla BBQ LLC, owning a 13.13% equity interest in Korilla BBQ LLC.

7.    Plaintiff Andrew Chang is a resident of Queens, New York and a member of Korilla BBQ LLC, owning a 2.5% equity interest in Korilla BBQ LLC.

8.    Plaintiff Eric Yu is a resident of Brooklyn, New York and a member of Korilla BBQ LLC, owning a 6.94% equity interest in Korilla BBQ LLC.

9.    Upon information and belief, Defendant Edward Song is a resident of Queens, New York and the managing member of Korilla BBQ LLC, owning a 41.7% equity interest in the Company.

10.    Upon information and belief, Defendant David Im is a resident of Queens County, New York and a member of Korilla BBQ LLC, owning an 8.33% equity interest in the Company.  Im participated with Edward in misappropriating assets from Korilla BBQ LLC, destroying Korilla BBQ LLC and setting up alternative Korilla-branded businesses in which Korilla BBQ LLC and Plaintiffs had no interest (the "Knockoff Korilla Businesses") in violation of Korilla BBQ's rights.

11.     Upon information and belief, Defendant Hardy Chung is a resident of Queens County, New York, an investor in and managing member of Aegis 233 LLC, and a member of KEVT.  Chung participated with Edward in setting up Knockoff Korilla Businesses and lied to the Court and Plaintiffs in an effort to protect his and Edward's ill-gotten gains.

12.     Upon information and belief, Defendant Byung Keun Song, a/k/a Isaac Brian Song, is a resident of Queens County, New York, and the father of Edward.  Byung Keun participated with and aided Edward in setting up the Knockoff Korilla Businesses.  He signed a lease dated January 10, 2017 with Forest City Bridge Street Associates II, LLC on behalf of AEGIS 42, LLC d/b/a KORILLA BBQ for space at 2 Metrotech Center in Brooklyn, where it operates a Korilla restaurant.  Byung Keun signed this lease as "member" of Aegis 42, LLC. The address used by him for Aegis 42, LLC was the same as Korilla BBQ LLC's, and the P.O. Box used by him for Aegis 42, LLC belonged to Korilla BBQ LLC. Upon information and belief, he also guaranteed the lease for the Korilla restaurant at 672 Lexington Avenue, signing as "Isaac Brian Song." He also took and/or received payments from Korilla businesses with which he apparently had no connection.

13.     Upon information and belief, Defendant Young Sun Song, a/k/a Rebekah Song, is a resident of Queens County, New York, and the mother of Edward.  She participated with and aided Edward in looting Korilla BBQ LLC and in setting up the Knockoff Korilla Businesses. She intermingled Company assets with her and her family's personal assets; she applied for a loan from BBCN Bank to open a Korilla restaurant and offered to pledge all of the Company's equity and/or assets to the Bank to secure the loan, even though she had no interest in Korilla BBQ, LLC; and she conspired with Edward to have those interests or assets unlawfully transferred to her so that the two of them could open a Knockoff Korilla Business.

14.     Upon information and belief, Defendant William Song is a resident of Queens County, New York, the brother of Edward, and the nominal "owner" of Defendants Grand Koast

LLC, Koast LLC, Kommissary LLC and 3E LLC, each of which operate Knockoff Korilla Businesses. William participated with and aided Edward in setting up the Knockoff Korilla Businesses and in seeking to hide information about them from the Court and Plaintiffs.

15.     Upon information and belief, Defendant William Edward Song is a resident of Queens, New York, and he is an alias of Edward. He signed a license agreement dated May 10, 2017 with Urbanspace Grand Central LLC for space at 230 Park Avenue in Manhattan, in which Grand Koast LLC operates a Korilla restaurant.  He signed as an "authorized signatory" of Grand Koast LLC; however, his signature was actually Edward's, who was trying to disguise himself as William. William Edward Song is being named as a Defendant out of an excess of caution in case he is a separate individual.

16.     Upon information and belief, Defendant Esther Choi is a resident of Queens County, New York, and the girlfriend of Edward. She participated with Edward in looting Korilla BBQ LLC and in setting up the Knockoff Korilla Businesses.  She collaborated with Edward in the misappropriation of the Company's assets and putting the Company out of business; collaborated with Edward in obtaining pop-up locations for Edward's Knockoff Korilla Businesses; lent liquor licenses belonging to her companies, Mokbar and Mokbar II, to Edward's Knockoff Korilla Businesses so they could qualify for pop-up store locations; and worked for or with the Knockoff Korilla Businesses on a regular basis.

17.     Upon information and belief, Defendant White Tiger Named Korilla, LLC is a New York limited liability company, which is headquartered in Queens, New York, and was formed on April 8, 2014 to own and operate a Knockoff Korilla Business at 23 3rd Avenue.

18.     Upon information and belief, Defendant Korilla East Village Truck, Inc. is a New York corporation headquartered in Queens, New York which was formed on October 15, 2015 to own and operate one or more Knockoff Korilla Businesses, in particular, food trucks.

19.     Upon information and belief, Defendant LET Group LLC is a New York limited liability company headquartered in Queens, New York, which was formed by Edward on July 30, 2010 in an effort to obtain design services from a firm called Box Creative, by paying it in "equity" rather than cash. Upon information and belief, LET Group has never had any revenues and Box Creative never received any compensation for its work. Later, Edward purported to transfer the KORILLA trademarks from Korilla BBQ LLC to LET Group and claimed that LET Group owned them.  LET Group participated with Edward in stealing Korilla BBQ LLC's trademarks and in setting up the Knockoff Korilla Businesses in violation of Korilla BBQ's rights.

20.     Upon information and belief, Defendant Aegis 233 LLC is a New York limited liability company headquartered in Manhattan, New York, which was formed on August 13, 2014 to own and operate a Knockoff Korilla Business at 23 3rd Avenue in Manhattan.

21.     Upon information and belief, Defendant Aegis 42, LLC is a New York limited liability company with its headquarters in Manhattan, New York which was formed on September 13, 2016 to own and operate a Knockoff Korilla Business at 2 Metrotech Center in Brooklyn, New York.

22.     Upon information and belief, Defendant Grand Koast LLC is a New York limited liability company with its headquarters in Manhattan, New York which was formed on April 26, 2017 to own and operate a Knockoff Korilla Business located at 230 Park Avenue in Manhattan.

23.     Upon information and belief, Defendant Koast LLC is a New York limited liability company with its headquarters in Manhattan, New York which was formed on December 28, 2016 to own and operate a Knockoff Korilla Business at 672 Lexington Avenue in Manhattan.

24.    Upon information and belief, Defendant Kommissary LLC is a New York limited liability company with its headquarters in Manhattan, New York which was formed on December 12, 2016 to own and operate a Knockoff Korilla catering business.

25.    Upon information and belief, Defendant 3E LLC is a New York limited liability company with its headquarters in Queens, New York which was formed on July 20th, 2016 to own and operate Knockoff Korilla Businesses, including at the U.S. Open Tennis Championships in Queens.

26.    Upon information and belief, John Does 1 through 10 are individuals and/or entities who own and operate or have owned and operated Knockoff Korilla Businesses, whose identities are not yet known to Plaintiffs.

## BACKGROUND

**A.    The Food Truck Concept and Business**

27.    In 2009, Plaintiff Stephen Park and Defendant Edward Song joined to open a restaurant.  Thereafter, they decided to begin operating a "food truck" focusing on Korean-Mexican barbeque.

28.    In 2009, Park and Edward developed the concept of using the tradename KORILLA and using a tiger in their logo.

29.    They built the first food truck together and began operations in October 2010.

30.    Park operated and managed the daily business of the truck while Edward managed the back office and also tried to raise capital to expand the food truck concept.

31.    The two were equal partners in the business, although no formal agreement had been executed between them.

32.    The food truck and this concept were a success.

33.     On March 9, 2009, Edward formed Korilla BBQ, LLC, a Delaware limited liability company, to act as a fundraising vehicle for the Korilla BBQ business. It is believed that Edward tried to raise funds in this entity, but was unsuccessful.

34.     On June 29, 2010, they formed Korilla BBQ LLC, a New York limited liability company (hereinafter, "Korilla BBQ LLC" or the "Company") to do the same.

35.     On July 7, 2010, Korilla BBQ LLC filed a trademark application for the mark KORILLA with the United States Patent and Trademark Office ("USPTO").

36.     On April 14, 2011, Korilla BBQ LLC filed a trademark application for the mark KORILLA BBQ, with a tiger logo, with the USPTO.

37.     Also on April 14, 2011, Korilla BBQ LLC filed a trademark application for the mark KBBQ, with the USPTO.

38.     On July 30, 2010, Edward formed LET Group, LLC.

39.     At some point thereafter, Edward began to claim that LET Group owned the KORILLA trademark. This was impossible both legally and because a Korilla entity had been using them for almost 16 months before LET Group was formed.

40.     Edward's explanation of what LET Group was, what it owned and who were its members kept changing over time and depending on who the audience was.

41.     Edward prepared documents showing that LET Group was a joint venture between him and the principals of Box Creative. Edward purported to give the Box Creative principals 11% of the equity in LET Group in lieu of cash for their work on Korilla design projects.

42.     Meanwhile, the truck business remained profitable.

43.    Later in 2010, Plaintiffs Thomas Yang, Paul Lee, and Eric Yu and Defendant David Im invested approximately $180,000 into Korilla BBQ LLC for the purpose of purchasing two additional food trucks and a commissary and for building out a company office.

44.    A First Amended and Restated Operating Agreement of Korilla BBQ LLC, the New York limited liability company, with a date as of November 2, 2010, was prepared listing Park, Yang, Yu, Lee, Edward and Im as members (the "Operating Agreement"), but it was not executed by all of the parties thereto.

45.    The Operating Agreement, signed only by Edward, Thomas Yang and Eric Yu, included among its provisions:

a.    That all of its assets would be held by and for Korilla BBQ;

b.    That Edward was the Manager and was thus obligated to use appropriate care in his duties and devote the time necessary to do so;

c.    Confidentiality and non-compete provisions for the members;

d.    That the Company books and records, which were available for member inspection, must be maintained; and

e.    The specific requirement that all company income was to be deposited into bank accounts, which were not to be commingled with Edward's money or accounts.

46.    The Operating Agreement did not provide the parties' percentage ownership interests in Korilla BBQ.

47.    Lee assisted in the trucks' unique design. Park was the most knowledgeable in selecting tools and equipment for the commissary and organizing the truck, and was thus in charge of the truck's production and food organization.

48.    Edward had no knowledge of these areas.

49.     The food truck business was receiving substantial publicity at this time, with Korilla BBQ's business singled out as a uniquely successful venture in the food truck business.

50.     Thereafter, at Edward's request, Yang sold to Andrew Chang 2.5% of his interest in Korilla BBQ for $10,000. Chang would be a manager on one of the trucks.

51.     The parties then agreed that Korilla BBQ's membership interests were held by Edward (41.7%), Stephen Park (12.67%), Thomas Yang (14.73%), Eric Yu (6.94%), David Im (8.33%), Paul Lee (13.13%) and Andrew Chang (2.5%).

52.     Throughout this period, Korilla BBQ's business remained fast-paced and required long days on the trucks.

53.     Edward, however, did not participate in the work on the trucks in any meaningful way.  Instead, he managed the Company's back-office, including its finances.

**B.      Korilla's Business Receives Substantial Attention**

54.     The Korilla BBQ food trucks were doing well and continuing to build a reputation and following among both "foodies" and the press.

55.     Korilla BBQ moved to an upgraded commissary to better prepare its food.

56.     In early 2011, while the new trucks were being brought to use in Korilla BBQ's business, the members learned that Korilla BBQ had been selected to compete in a nationally televised competition on The Food Network called The Great Food Truck Race (the "Race").

57.     This prestigious selection would bring Korilla BBQ substantial publicity and exposure, further cementing its reputation as a primary player in the food truck and Korean-Mexican barbeque fast food businesses.

58.     The truck designs were uniquely built to allow quicker and more efficient delivery of the food which helped the truck compete in the Race.

59.     This exposure would bring Korilla BBQ meaningful work in corporate catering and other opportunities separate from retail sales off the trucks.

60.     Korilla BBQ was accepted into the Race, and Lee, Park and Edward competed.

61.     One of the three food trucks was taken to the competition while the other two remained on the street, operated by Im and Chang.

62.     As anticipated, the competition generated positive press and social media exposure for Korilla BBQ.

63.     The growth of Korilla BBQ's reputation allowed it to garner corporate catering work, and by the summer of 2011 alone, these jobs had generated almost $100,000 of income for Korilla BBQ.

## C.     Edward's Gross Misconduct and Theft of Company Assets and Business

64.     Upon their return from the Race, Lee and the others discovered that Korilla's books and revenue records had not been properly kept.

65.     Lee took over most of the company bookkeeping, with Yang double-checking some of the work.

66.     Lee also overhauled Korilla BBQ's social media presence, including its substantial presence on Twitter, Instagram and Facebook, which were important tools for Korilla BBQ's business.

67.     Nevertheless, Edward insisted that he take over the bookkeeping and suddenly wanted full control of Korilla BBQ.

68.     Edward refused to allow anyone other than himself to control the business and banking records. Park also had access to the bank account, but did not take care of the business's books.

69.     In October 2011, cash transfers were made from Korilla BBQ's bank account to accounts controlled by Edward and his family members.

70.     No permission was requested or obtained, nor did Edward provide any disclosure of these transfers. These transfers of company funds were made without authorization and for the personal benefit of Edward and his family members.  Upon information and belief, they included transfers to Mountainside Development LLC, a company that, on information and belief, is owned by Byung Keun and Young Sun, which develops real estate in South Korea.

71.     These transfers were not made for Korilla BBQ's benefit or in service of its business interests.

72.     As the Plaintiffs would later learn, in addition to his personal use of company funds, Edward was using Company funds to establish the Knockoff Korilla Businesses. He transferred Company funds to, among others, (i) entities that would compete with Korilla BBQ, including LET Group, KEVT and White Tiger Named Korilla, LLC; (ii) his girlfriend, Defendant Esther Choi, and her entities Mokbar LLC and Mokbar II LLC, who participated in the looting of the Company; (iii) his friend and partner in certain of the Knockoff Korilla Businesses, Defendant Hardy Chung, and Chung's entity, Aegis 233 LLC; and (iv) his mother, Defendant Young Sun Song, who is believed to have transferred those funds out of the country. None of these individuals or entities had a business relationship with the Company and there is no conceivable reason why the Company would pay them money.

73.     Edward also helped himself to Company monies to support his lifestyle.

74.     Edward used Korilla BBQ funds to renovate his parents' personal property in Queens under the guise of the space being used for Korilla BBQ. The space ultimately became a living space for Edward and his then-girlfriend, Sue Min.

75. Edward also diverted business from Korilla BBQ LLC to a new entity he formed called In Trucks We Trust LLC.  At the time, the most profitable part of Korilla's business was to rent out trucks and re-vinyl them for use by companies such as American Express, The Gap, and All Clad in corporate promotions. When Edward, who worked in the back office and answered calls, saw the profitability of this line of business, he set up his own company and took this business from Korilla BBQ LLC to In Trucks We Trust.

76. In contrast, when Plaintiffs had identical truck rental opportunities, they brought those opportunities into the Company.  In at least one instance, when the funds came into Korilla BBQ LLC for a truck rental that had been brought in by Lee, Edward took the money anyway.

77. Edward also converted Korilla BBQ's intellectual property and purportedly transferred it to LET Group.

78. Specifically, in 2011, Korilla BBQ received federal trademark registrations for the KORILLA BBQ logo and the KBBQ and KORILLA marks.

79. Thereafter, in 2014, Edward, acting alone and without disclosure to or approval from the other members in the Company, filed assignment documents by which he assigned and transferred these valuable marks from Korilla BBQ LLC to Defendant LET Group.

80. Upon information and belief, LET Group paid no consideration for these valuable assets.

81. Upon information and belief, these transfers were intended to steal Korilla BBQ's valuable trademarks for the benefit of Edward and his associates.

82. In 2016, Edward applied for registration of the KORILLA mark for catering services, listing LET Group as the applicant.

83. When challenged with this misconduct, Edward demurred but did not deny his theft, promising to repay the stolen funds.

84.     Because the Company revenue was largely in cash, certainly from sales from the truck, tight controls were necessary to properly manage and record revenues.

85.     Despite his promises, Edward refused to implement appropriate controls or relinquish control of the accounting and banking.

86.     He did this so that he could continue to siphon off Company funds for his personal use, knowing that tracking those cash funds would be difficult.

87.     Edward was not involved in any meaningful way in day-to-day business of the trucks, and because of the success of the truck-based business and its fast-paced sales, the others would have difficulty monitoring his conduct.

88.     Edward knew this and, given his "management" role with the business, was able to control the cash-flow of the business while acting with a free hand.

89.     As a result of this conduct, the business was often faced with a cash-flow shortfall.

90.     Things came to a head when a literal trail of cash, in large denominations, was found on the street in front of Edward's house, leading into the building.

91.     Although Edward continued to refuse to cooperate with Lee and the other Plaintiffs in their efforts to steady Korilla BBQ and account for missing money, he did admit to giving money to his mother, who transferred the money to unspecified people in South Korea.

92.     Edward promised to try to get those funds returned.

93.     Lee tried to go through the company books, but Edward refused to cooperate.

94.     To keep Korilla BBQ afloat, Lee paid approximately $15,000 out of pocket to cover critical company bills. Lee expected to be repaid.

95.     At this point, frustrated and suffering abuse from Edward, Lee backed off of the Company management.

96.     In early 2013, Edward's mismanagement caused the permit and license fees for two trucks to go unpaid—a fact not then known to Plaintiffs—which in turn led to the two trucks being suspended from street operations, crippling Korilla BBQ and removing it from its street business and visibility.

97.     While the trucks were off the street, equipment was stolen from them and from the commissary.

98.     Due to Edward's behavior, Korilla BBQ's business quickly collapsed.

99.     In an effort to reverse the situation, Lee made overtures to Edward, and Yang threatened a lawsuit with the hope that Edward would at least release the banking and social media accounts to the others.

100.    Plaintiffs worked valiantly to revive Korilla BBQ's business, despite Edward's involvement.

101.    Plaintiffs worked at a fever pitch to restore Korilla BBQ's reputation.

102.    Lee was able to secure a catering deal, using those proceeds to pay the license and permit fees which allowed the trucks to return to the street.

103.    Over the summer of 2013, more catering work was forthcoming, including highly visible work, and revenue improved.

104.    However, Edward's ongoing management and bank account access was a source of serious concern among the individual Plaintiffs.

105.    Finally, Edward agreed that Im would take over the Company's books and that he would step back from an active role with Korilla BBQ.

106.    Im would also control the commissary and oversee the trucks.

107.    While the individual Plaintiffs did not believe that this was the best approach, they felt that Edward had to be replaced and agreed to the arrangement.

108.    However, Edward was able to maintain access to the bank accounts as he was their signatory, thus allowing him to continue taking Korilla BBQ funds.

109.    Because Edward had refused to pay Company bills, the individual Plaintiffs were forced to do so out of their own pockets or to make arrangements with the vendors.

**D.    Defendants Compete with Korilla BBQ**

110.    In early 2014, Edward tried to open a storefront business called Korilla FiDi with Defendant Im.

111.    Edward did all of the work to set up a restaurant at 108 John Street and he created Korilla FiDi, LLC to own and operate it. He drafted the terms of its operating agreement, but when it was done, he substituted his mother's name for his as the member and signor of this agreement.

112.    Edward and Im specifically tried to piggy-back off of the name recognition of Korilla BBQ in trying to open Korilla FiDi.

113.    Without the knowledge of the individual Plaintiffs, Edward and his mother applied for a loan in her name to obtain the funds needed to open this restaurant.  They proposed that she would pledge the equity and/or assets of Korilla BBQ to obtain the funds needed to open the store. These did not belong to her – and most of the equity did not belong to Edward.

114.    His effort to open this store ultimately failed, as Edward was unable to secure sufficient investors or funding.

115.    Later, Edward discussed in a meeting with Lee and Chang options by which he would form a "new Korilla" entity, but without the remaining members of Korilla BBQ LLC. The Plaintiffs would later learn that this was not the first time that Edward had discussed a

scheme by which he would take the Korilla name and business assets and form a new entity with only a select few of the current Korilla BBQ members.

116. Edward formed many Korilla entities in his constant efforts to deprive Plaintiffs of their rights.

117. Around June 2014, Edward sold one of Korilla BBQ's trucks to another food truck business and pocketed those sale proceeds for himself.

118. Edward left for South Korea soon afterward.

119. Before leaving, however, he began to build out a storefront located in the East Village.

120. When Edward returned from South Korea in October 2014, this store opened at 23 3rd Avenue and began to compete with Korilla BBQ LLC, using Korilla BBQ's own trademarks, domain name, websites, recipes, business concepts and methods, customer lists, trade secrets, money, employees, equipment and inventory. All of this was in clear violation of the Company's Operating Agreement and of Edward's fiduciary duties

121. Edward took over Korilla BBQ and excluded the other members, except Im who agreed to cooperate with him. Edward terminated the individual Plaintiffs' email accounts and changed the passwords to Korilla BBQ's social media accounts.

122. These accounts were and continue to be critical to Korilla BBQ's sales and success, especially with regard to the truck business, because that business communicates with and promotes itself to its customers via social media.

123. Social media was even more critical to Korilla's growth after the exposure earned by the Race.

124.    Despite his promise to back off from Korilla BBQ's business, Edward demanded that the trucks be sold to Defendant Hardy, who would operate them with the Plaintiffs.

125.    That demand was rejected by Plaintiffs.

126.    While his store was being built, Edward approached Im, who was often at the commissary where the company trucks were parked, and together they took all of Korilla BBQ's equipment and inventory.

127.    This act constituted nothing less than outright theft and crippled Korilla BBQ.

128.    Edward also refused to pay the vendors of Korilla BBQ.

129.    All of this prevented the trucks from operating.

130.    In response, Lee and the others confronted Chung, who arranged for the return of the equipment and personally paid for the stolen inventory.

131.    Lee and Park could not fight with Edward while successfully operating the trucks, so they decided to focus their efforts on the trucks.

132.    At the same time, Edward would direct some catering jobs to the trucks, but would seize the proceeds from those jobs as soon as the checks were deposited.

133.    Another example of Edward's theft of Korilla BBQ's bank funds was a Groupon promotion he launched for Korilla BBQ's truck. Edward pocketed the funds received for this promotion while leaving the trucks to fulfill the Groupon orders without receiving any funds.

134.    This promotion allowed customers to buy a coupon entitling them to a discounted meal from the truck.

135.    Edward did not inform Plaintiffs of this promotion, so customers would show up at the truck with discounted coupons without allowing the truck to prepare for the onslaught of customers.

136.    Not honoring the Groupon promotion was not a viable option for the trucks, as it would create a disgruntled public.

137.    The proceeds from this promotion were paid by Groupon via check to Korilla BBQ, the funds from which Edward simply took from the Korilla BBQ bank account.

138.    At this point, in 2015, only one truck remained operational for Plaintiffs.

139.    Meanwhile, Edward's store, which called itself Korilla BBQ but operated under Aegis 233 LLC, was operational and actively and openly competing with Korilla BBQ.

140.    From this point on, while in control of Korilla BBQ's social media account and email communications, Edward continued to steal numerous business opportunities that were intended for Korilla BBQ.

141.    Separate from his competition, Edward's misconduct caused obvious confusion and actual lost sales and opportunities for Korilla BBQ.

142.    Edward impersonated and misused the Korilla BBQ name to steal those business opportunities, including very valuable and highly visible catering jobs.

143.    Meanwhile, because Edward maintained his access to Korilla BBQ LLC's bank account, and because the proceeds from the truck's catering jobs were deposited into these accounts, Edward was able to take the funds generated by the truck's catering jobs for himself.

144.    Some of these catering checks were directly mailed to Edward's house.

145.    Edward was also able to access the Korilla BBQ truck, which was parked at the commissary, as the facilities serviced a number of food truck businesses so that access was not difficult.

146.    He continued to sabotage Korilla BBQ's truck, this time by stealing the truck's generator and its license plates, with the assistance of Defendant Im.

147.    Edward even took the street parking spots long-held by Korilla BBQ LLC and replaced them with his knockoff Korilla trucks in his effort to first prevent Plaintiffs from operating Korilla BBQ LLC's truck.   This went on for about a year.

148.    In 2016, Korilla BBQ's last truck was booted and towed due to unpaid parking tickets.

149.    Plaintiffs did not know the extent of these tickets because they had been directly mailed to Edward's house. By the time they became aware of these it was too late for them to deal with them.

150.    After the truck was towed, it ended up in the possession of Choi, who on information and belief was storing it for Edward.

151.    At this point, Edward and his associates had killed off the original Korilla BBQ.

152.    In March 2016, Lee worked on raising funds to repair one of the old trucks to bring it back to the street.

153.    Edward knew this, and told Lee that he had a buyer for the truck. Lee refused.

154.    Lee and the others later learned that Edward had sold that truck and pocketed the funds.

155.    Edward had been aware that Plaintiffs intend to repair this truck and bring it back to the street.

156.    Edward's theft and subsequent sale of this truck was intended to prevent Plaintiffs from doing so.

157.    An additional motivation for Edward's efforts to put Plaintiffs' trucks out of business—or at least off the street—was that his competing trucks were able to take the place of Plaintiffs' disabled ones and reap the proceeds of the trucks' substantial cash sales.

158.    Edward currently has at least one truck on the street impersonating Korilla BBQ trucks.  He also continues to open knockoff stores using the KORILLA and KBBQ brands, and thereby continuing to build his stolen brand.

159.    At no time did Edward dedicate his efforts to further Korilla BBQ LLC's business.

160.    Edward's approach was to steal the business and its opportunities for himself.

161.    He did this while allowing and encouraging the individual Plaintiffs to literally build the business of Korilla BBQ from the ground up to become a name brand business with a substantial reputation and visibility.

162.    Edward then used that reputation for his benefit by falsely representing that his Knockoff Korilla Businesses were Korilla BBQ and its affiliates.

163.    At the end, Edward was successful in killing off Korilla BBQ while at the same time taking its revenue, assets and business reputation for his own benefit.

164.    Currently, to Plaintiffs' knowledge, Edward operates multiple stores and a truck that is nearly identical to the one that Plaintiffs had operated.

165.    Plaintiffs do not share in the benefit of those businesses, to their ongoing and irreparable harm.

166.    Edward was joined in his efforts to destroy Korilla BBQ LLC's business by Defendants Im, Hardy and Choi.

167.    Because there was no board of Korilla BBQ LLC, any demand upon Edward and David Im to commence this litigation on behalf of Korilla BBQ would have been futile, as Edward was the individual driver behind every allegation that has destroyed Plaintiffs' business.

168.    From the beginning, Edward and his family treated Korilla's assets and business as their own assets, to do with as they chose, without regard for the rights of Plaintiffs or the Company.

169.    As already noted, Edward and his parents used the Company's funds to build an addition to the Song family's home.

170.    Edward transferred well over $100,000 in funds from the Company bank account to his parents' account without disclosing this to the other members of the Company. When he was questioned about this, he stated that his parents were having difficulties on another deal they were in and needed help.  He said everyone does this: transfers company funds to his parents when they need them.

171.    This is just the tip of the iceberg.  Most of the Company's revenues were in cash, and this cash was delivered to Edward on a daily basis.  Almost none of it was deposited in the Company's checking account, and those funds were never accounted for by Edward. Upon information and belief, the Company's cash was frequently transferred by Edward to his parents and mingled with their own cash.

172.    During the period that Edward controlled the Company's cash, not a single dollar was ever distributed to the other members. In contrast, during the relatively short period that Plaintiff Lee controlled the cash, the Company was able to make significant distributions, including one distribution of $100,000.

173.    As noted, Edward purported to or attempted to transfer title of all of the Company's equity to his mother, Young Sun Song, so she could pledge it as security for a loan to be used by Edward to open a Knockoff Korilla Business in the New York Financial District. The fact that he did not own 60% of that equity was of no concern to him or his mother.

**E.    Edward, Aided by Other Defendants, Set Up Knockoff Korilla Businesses in Which Korilla BBQ LLC and Plaintiffs Have No Interest**

174.    In 2014, when Plaintiffs began to confront Edward regarding his persistent looting, Edward began to divert the Korilla business from the Company to other entities he had set up.  He tried to hide his role in these companies by using his family members as proxies.

175.    Upon information and belief, Edward located the space for a Korilla restaurant at 23 3rd Avenue in Manhattan and did all of the work to turn the space into a Knockoff Korilla Business.  Chung invested in Aegis 233 LLC, which owned this restaurant, and he became co-managing partner along with Edward.

176.    According to an execution copy of Aegis 233's Operating Agreement and its tax returns, Chung was a 40% member of Aegis 233 LLC; Archie & Sons I, LLC, from whom it obtained the lease to 23 3rd Avenue, was a 40% member; Korilla BBQ LLC was a 10% member; and Box Creative LLC and Thaddeus Brinner, apparently an architect or designer, were each 5% members.

177.    Upon information and belief, Aegis 233 was very profitable during its four-year period of operation, and it made distributions to its members each month.

178.    Upon information and belief, the 10% payments due to the Korilla BBQ LLC were paid to Edward's father, Byung Keun Song, and Korilla BBQ LLC received nothing.

179.    Upon information and belief, the 23 3rd Avenue Korilla restaurant closed in late 2018, after its owner, Aegis 233 LLC, transferred it (via a long-term lease) to a developer in a transaction valued at $150 million.

180.    Edward routinely worked on every aspect of each new Knockoff Korilla Business, in violation of the Company's Operating Agreement and his fiduciary duties.

181.    Edward attempted to disguise this fact by claiming under oath that these entities were owned by Chung or William, and he was just an unpaid consultant to them.

182.    Byung Keun, Young Sun and William, as well as Chung, Im and Choi, joined Edward in looting the Company, misappropriating the KORILLA marks and intellectual property, and the establishing Knockoff Korilla businesses.

183.    The Song family had treated the original Korilla BBQ LLC business as their personal cash cow. When Plaintiffs protested, they forced it out of business and established Knockoff Korilla Businesses.

184.    As they had done with the Korilla BBQ LLC business, the Song family continued to intermingle funds between the Knockoff Korilla Businesses and themselves.

185.    After the U.S. Open receipts came into 3E LLC, that company distributed well over $100,000 to Byung Keun and Young Sun personally; some of these transfers were marked for payment of their personal credit card bills. According to Edward, Byung Keun Song and Young Sun had no ownership interest or role in 3E LLC.

186.    Esther Choi also assisted Edward's creation and expansion of the Knockoff Korilla Businesses in many ways, including by "lending" her Mokbar and Mokbar II liquor licenses to them so they could operate at various pop-up locations. She also worked with or for the Knockoff Korilla businesses in various ways, including planning of catering jobs for customers and working on menus.

**F.    Misappropriation of Trade Secrets, Domain Name and Other Intellectual Property**

187.    Edward misappropriated more than just Korilla BBQ LLC's trademarks; he also misappropriated Korilla BBQ LLC's name, domain name, social media accounts, email

addresses, business concepts and plans, and recipes. He and the other Defendants are still using them in connection with the Knockoff Korilla Businesses.

## G.    Opening of Knockoff Korilla Businesses

188.    Starting in 2014, Edward, with the aid and participation of the other Defendants, opened and operated multiple Korilla restaurants and businesses in violation of his obligations to the Company and his fiduciary duties (some of these were revealed in discovery and others not). These include:

(a)    a restaurant at **23 3rd Avenue in Manhattan** (now closed) owned by Aegis 233 LLC, itself ostensibly owned by Chung;

(b)    a restaurant at **55 Spring Street** (now closed), owned, upon information and belief, by Aegis 233 LLC;

(c)    a restaurant at **2 Metrotech Center** in Brooklyn, owned by Aegis 42, LLC and/or Kommissary LLC, the latter entity (according to Edward) being owned by William;

(d)    a restaurant at **230 Park Avenue** in Manhattan, owned by Grand Koast LLC and Kommissary LLC, entities (according to Edward) owned by William;

(e)    a restaurant at **672 Lexington Avenue** in Manhattan, owned by Koast LLC, an entity (according to Edward) owned by William;

(f)    a food truck owned by **KEVT** or another company (apparently still operating);

(g)    a pop-up restaurant location at the **U.S. Open Tennis Championships**, owned by 3E LLC, an entity (according to Edward) owned by William;

(h)    a pop-up restaurant location at **Javits Center**;

(i)    a pop-up restaurant location at the **New York Public Library** and/or **Bryant Park**; and

(j)    a pop-up restaurant location at **Madison Square Park**.

189.    In addition, Edward has been operating an expanding and highly profitable **Korilla catering business**, which constitutes a significant part of the overall Korilla business.

190.    Upon information and belief, Edward may have opened additional Korilla food establishments which he has refused to disclose in discovery in this case, and he has opened ancillary businesses, such as Korilla Sauce, etc.

191.    Edward has been and continues to be fully engaged in every aspect of the Knockoff Korilla Businesses, including site acquisition, lease and license negotiations, obtaining governmental approvals and licenses, hiring of employees, soliciting and taking orders from customers, attending to the logistics of catering events, paying rent and other bills, sending out tax forms, and receiving daily reports of receipts from the Knockoff Korilla Businesses' POS vendor (along with Chung and Im.)

192.    The Knockoff Korilla Businesses are run as one business, with one management team and one set of employees, all of whom report to Edward.

193.    Because the Knockoff Korilla Businesses operate as a single entity which calls itself "Korilla BBQ," there is a likelihood of confusion in that persons and businesses dealing with the Knockoff Korilla Businesses are likely to think that they are dealing with Korilla BBQ LLC.

194.    The addresses and owners of the Knockoff Korilla Business entities were often used interchangeably.  Entities were often mixed up and substituted for one another in a way that completely undermines Defendants' fictional story that the Korilla businesses were separate entities owned and run by others aside from Edward.

195.    To name one interesting example of this, a tax form forwarded by Edward to a customer for a U.S. Open event was sent from Kommissary LLC and lists Kommissary LLC's business name as "Korilla East Village" and its address as 23 3rd Avenue, New York, NY 10003. The form was signed by Edward.  According to Edward's sworn statements, neither Kommissary nor KEVT had anything to do with the U.S. Open; they did not have an address at 23 3rd Avenue, which was operated by Chung; and Edward had nothing to do with any of these entities other than as an unpaid consultant.

196.    Byung Keun, Young Sun and William act as nominal "owners" and/or "guarantors" of these new entities, but appear to have no role in their management.

197.    All of the Knockoff Korilla Businesses, which Edward is known to be operating, as well as those he has refused to disclose, take advantage of the Korilla trademarks, intellectual property, trade secrets, domain name, websites, email addresses, customer lists and other intellectual property owned by Korilla BBQ LLC. Edward has steadfastly failed and even refused to make complete disclosure of these businesses.

198.    Edward has continued to seek additional opportunities to capitalize on the Korilla trademarks, trade secrets and other intellectual property.

199.    All of these activities violate Edward's obligations under the Korilla BBQ LLC Operating Agreement, including his fiduciary duties to Korilla BBQ LLC and its members.

## FIRST CAUSE OF ACTION

## EQUITABLE ACCOUNTING AGAINST EDWARD SONG
### (Individual Claim)

200.    Plaintiffs repeat and re-allege each and every allegation previously set forth herein.

201.    Under New York law, the members of an LLC may seek an equitable accounting. This right is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest. The person responsible to account must produce financial records, demonstrate how money was expended and return pilfered funds or funds for which he is unable to account.

202.    Under New York law, those who have misappropriated a corporate opportunity, the entities they formed to carry on the misappropriated opportunity, and the offices and managers of those entities, have an obligation to account for profits and benefits accruing to the misappropriated businesses.

203.    Plaintiffs have a right to an accounting by Edward, since Edward was the Manager of Korilla BBQ LLC, a limited liability company in which they were members. Edward stood a fiduciary and trust-based relationship with Plaintiffs.

204.    Edward breached the duty imposed by that relationship to subordinate his personal interests to those of Korilla BBQ LLC and its members, as well as to preserve and protect Korilla BBQ LLC's trademarks, trade secrets, domain name websites, email addresses, customer lists and other intellectual property for the benefit of Korilla BBQ LLC and its members.

205.    Edward also breached the duty imposed upon him not to misappropriate business opportunities from the Company.

206.    Edward is obligated to account not just for the revenues and profits of Korilla BBQ LLC, but also for the revenues and profits generated by the Knockoff Korilla Businesses, including each and every one of the businesses using the Korilla tradenames, trade secrets,

domain name and other intellectual property.   These revenues should be included in the adjustments of the individual accounts of the members of Korilla BBQ LLC, and Edward should be obligated to return pilfered funds and any funds for which he is unable to account.

**SECOND CAUSE OF ACTION**[2]

**BREACH OF CONTRACT AGAINST EDWARD SONG**
**(Individual Claim)**

207.    Plaintiffs repeat and re-allege each and every allegation previously set forth herein.

208.    Edward breached the terms of the Operating Agreement in multiple respects.

209.    Edward breached Section 1.2, which provides:

**1.2 Name** - The business of the Company shall be conducted solely under such name and title to all assets of the Company shall be held in such name.

(a)    by purporting to transfer the Company's trademarks to LET Group, another entity controlled by him;

(b)    by filing new trademark applications on the Company's trademarks on behalf of LET Group;

(c)    by conducting the business of the Company in Knockoff Korilla Businesses other than the Company;

(d)    by transferring assets of the Company to Knockoff Korilla Businesses; and

(e)    by unilaterally filing for the dissolution of the Company, which he did after this lawsuit asserting derivative claims on behalf of the Company against him, had been filed.

210.    Edward breached Section 2.7, which provides:

---

[2] This claim is referred to as the sixth cause of action in the original complaint

**2.7 Ownership of Company Property**. All property of the Company, whether real, personal or mixed, tangible or intangible, shall be deemed to be owned by the Company as an entity, and no Member, individually, shall have any direct ownership interests in such property.

      (a)      by purporting to transfer the Company's trademarks to LET Group;

      (b)      by filing upwards of three new trademark applications on the Company's trademarks on behalf of LET Group;

      (c)      by misappropriating the Company's cash and other property; and

      (d)      by pledging the Company's property for non-Company purposes and using Company property to secure loans for family members of his.

211.    Edward breached Section 1.2, which provides:

**3.2.1** The Managers shall receive no compensation for acting as Manager of the Company.

      (a)      by continuously drawing money from the Company; and

      (b)      by looting and misappropriating Company funds.

212.    Edward Breached Section 3.4, which provides:

**3.4 Members May Not Engage in Other Activities.** Members agree not to engage in any future business or business arrangements that will sell Korean BBQ or Korean styled grilled meats in taco, burrito, bun or any other portable vehicle.

      (c)      by engaging in multiple businesses that sell or propose to sell Korean-Mexican BBQ or Korean-Mexican styled grilled meats in taco, burrito, bun or any other portable vehicle, including without limitation Korilla East Village Truck, Inc., White Tiger Named Korilla, LLC, LET Group LLC, Aegis 233 LLC, Aegis 42, LLC, Grand Koast LLC, Koast LLC, Kommissary LLC, and 3E LLC.

213.    Edward breached Section 4.3, which provides:

**4.3 Bank Accounts**. . .  The funds of the Company shall be deposited in such accounts and shall not be commingled with the funds of the Manager or any affiliates thereof.

       (d)       by constantly commingling the Company's funds with his own funds, the funds of his family members and friends, and of companies controlled by them.

214.    Edward violated Section 4.2.3, which provides:

**4.2.3** No Member nor the Member's representatives shall not divulge to any other person any confidential or proprietary data, information or property or any trade secrets of the Company discovered in any inspection of the Company's books and records except as required by law (*sic*).

       (a)       by divulging the Company's confidential and proprietary information and trade secrets to others so they could compete with the Company, join him in opening Knockoff Korilla Businesses, and ultimately put the Company out of business.

215.    Edward violated Section 2.2, which relates to capital accounts of the members, by failing to maintain records thereof and failing to prepare an Exhibit A to the Operating Agreement.

216.    Edward violated Section 2.4, which states:

**2.4 Distributions**. Subject to the provisions of Sections 2.5, the Manager shall distribute or cause to be distributed to the Members, not less often than annually, in accordance with Section 2.4, the excess, if any (**"Net Cash Flow"),** of the aggregate amount of all income and receipts of all kinds received by the Company from all sources over all expenses and disbursements of the Company, including any reserves pursuant to Section 3.5.

       (a)       by failing to make such distributions and instead misappropriating all funds available for distribution to himself and his family members.

220.    Defendants' acts were willful and malicious.

221.    As a result of his multiple breaches, Plaintiffs are entitled to damages in an amount not yet ascertainable but believed to be in excess of $5 million, as well as disgorgement by Edward of his ill-gotten gains and forfeiture of his compensation throughout his period of disloyalty under the faithless servant doctrine.

### THIRD CAUSE OF ACTION[3]

### BREACH OF FIDUCIARY DUTIES TO THE COMPANY AGAINST
### EDWARD SONG
### (Derivative Claim)

228.     Plaintiffs repeat and re-allege each and every allegation previously set forth herein.

229.     As Managing Member of the Company, Edward owed the Company fiduciary duties and a duty of undivided loyalty; he was obligated not to promote his personal interests at the expense of the superior interests of the Company.

230.     Edward took advantage of his position of trust to promote his own interests at the expense of the Company. He thus breached his fiduciary duties to the Company in multiple material respects.

231.     Edward purported to transfer the Company's trademarks to LET Group LLC, an entity he controlled, without authorization or consent, and for no consideration.  Such transfer was not for any corporate purpose and is a violation of his fiduciary duties.

232.     Edward made additional filings relating to the KORILLA marks, claiming that they are the property of LET Group LLC. Such filings were not for any corporate purpose and are violations of his fiduciary duties.

233.     Edward engaged in self-dealing with Korilla assets, including but not limited to cash, trucks, equipment, inventory, loans, trademarks, tangible properties and intangible properties.

234.     Edward usurped multiple business opportunities of the Company by opening multiple Knockoff Korilla Businesses.

---

[3] This claim is referred to as the eighth cause of action in the original complaint

235.    The Knockoff Korilla Businesses competed with the Company and ultimately put it out of business.

236.    Edward misappropriated Company funds for himself and members of his family.

237.    Edward, aided by Im and Chung, stole inventory and equipment from the Company's commissary in Maspeth and took them for use by Aegis 233 and its Korilla store at 23 3rd Avenue.

238.    Edward took deliberate steps to put the Company out of business, including misappropriating its funds, failing to pay parking tickets, failing to renew licenses, and selling Company trucks and pocketing the proceeds.

239.    Edward breached his fiduciary duties to the Company by failing to maintain accurate books and records.

240.    Edward breached his fiduciary duties to the Company by failing to disclose material information relating to his activities.

241.    As a result of his multiple breaches, the Company is entitled to damages in an amount not yet ascertainable but believed to be in excess of $5 million, as well as disgorgement by Edward of his ill-gotten gains and forfeiture by Edward of his compensation under the faithless servant doctrine.

242.    Edward's actions exhibit a high degree of moral turpitude and were directed at the public generally.  In light of this and of the need to deter Edward from engaging in similar conduct in the future, the Company additionally is entitled to punitive damages.

## FOURTH CAUSE OF ACTION[4]

### BREACH OF DUTIES OF LOYALTY AND CARE AGAINST EDWARD SONG
**(Individual Claim)**

243.    Plaintiffs repeat and reallege each and every allegation previously set forth herein.

244.    Edward owed plaintiffs duties of loyalty, care, and obedience.

245.    Included in those duties were their obligation not to steal businessopportunities, transfer away valuable business assets, compete with Korilla BBQ andmislead the individual plaintiffs in connection with that gross misconduct.

246.    But Edward did do all of those things, knowingly, and with the intent to injure plaintiffs and enrich themselves and their associates.

247.    As such, Edward has breached their fiduciary duties to plaintiffs andare liable to them in an amount to be determined at trial but not less than $3 million, jointly and severally, plus interest and costs.

## FIFTH CAUSE OF ACTION[5]

### AIDING BREACHES OF FIDUCIARY DUTIES TO THE COMPANY AGAINST WILLIAM SONG, BYUNG KEUN SONG, ESTHER CHOI, HARDY CHUNG, KORILLA EAST VILLAGE TRUCK, INC., WHITE TIGER NAMED KORILLA, LLC, LET GROUP LLC, AEGIS 233 LLC, AEGIS 42, LLC, GRAND KOAST LLC, KOAST LLC, KOMMISSARY LLC, 3E LLC, and JOHN DOES 1 THROUGH 10
**(Derivative Claim)**

245.    Plaintiffs repeat and re-allege each and every allegation previously set forth herein.

246.    Defendants William Song, Byung Keun Song, Esther Choi, Hardy Chung, Korilla East Village Truck, Inc., White Tiger Named Korilla, LLC, LET Group LLC, Aegis 233 LLC,

---

[4] This claim is referred to as the ninth cause of action in the original complaint
[5] This is a new claim referred to as the eighth cause of action in the Proposed Amended Complaint

Aegis 42, LLC, Grand Koast LLC, Koast LLC, Kommissary LLC, 3E LLC and John Does 1 through 10 were each aware of the Company's interest in the KORILLA and KBBQ trademarks and other intellectual property.

247.    Defendants William Song, Byung Keun Song, Esther Choi, Hardy Chung, Korilla East Village Truck, Inc., White Tiger Named Korilla, LLC, LET Group LLC, Aegis 233 LLC, Aegis 42, LLC, Grand Koast LLC, Koast LLC, Kommissary LLC, 3E LLC and John Does 1 through 10 were each aware that William owed fiduciary duties to the Company and that he was breaching those duties.

248.    Defendants William Song, Byung Keun Song, Esther Choi, Hardy Chung, Korilla East Village Truck, Inc., White Tiger Named Korilla, LLC, LET Group LLC, Aegis 233 LLC, Aegis 42, LLC, Grand Koast LLC, Koast LLC, Kommissary LLC, 3E LLC and John Does 1 through 10 knowingly and substantially assisted Edward and participated in his breaches of his fiduciary duties to the Company.    In particular they aided and participated in his misappropriation of the Company's interest in the KORILLA and KBBQ trademarks, recipes, operating procedure, know-how and trade secrets.

249.    The Company thereby suffered damages and was ultimately put out of business.

250.    As a result, Plaintiffs are entitled to damages in an amount not yet ascertainable but believed to be in excess of $5 million.

251.    The above-named Defendants' actions exhibit a high degree of moral turpitude and were directed at the public generally.    In light of this and of the need to deter them from engaging in similar conduct in the future, Plaintiffs additionally are entitled to punitive damages.

## SIXTH CAUSE OF ACTION[6]

## UNFAIR BUSINESS PRACTICES AGAINST EDWARD SONG, DAVID IM, HARDY CHUNG, KORILLA EAST VILLAGE FOOD TRUCK, INC., WHITE TIGER NAMED KORILLA, LLC AND AEGIS 233 LLC
### (Derivative Claim)

252.    Plaintiffs repeat and re-allege each and every allegation previously set forth herein.

253.    Defendants Edward Song, David Im, Hardy Chung, Korilla East Village Food Truck, Inc., White Tiger Named Korilla, LLC And Aegis 233 LLC own and operate the businesses, stores andrestaurants, and food trucks alleged herein.

254.    Each of these parties are knowingly engaged in ventures that employ the stolen assets and property of Korilla BBQ.

255.    Each of these parties have knowingly duped and mislead the public to believe that they are plaintiff Korilla BBQ.

256.    Each of these parties have taken substantial monies that were intended to be paid To Korilla BBQ and have been enriched by their fraud and misrepresentation.

257.    Each of these parties have violated New York General Business Law §§ 133 and 349.

258.    Each of these parties have violated New York Business Corporation Law § 301.

259.    Each of these parties has undertaken the unlawful conduct alleged herein through the misappropriation of Federal trademark registrations that belong to Korilla BBQ.

260.    The conduct of these parties has damaged the reputation of Korilla BBQ andits registered trademarks.

---

[6] This claim is referred to as the tenth cause of action in the original complaint. The Court, in its October 10, 2018 decision [Dkt. 138], recognized this claim as being one of a trademark infringement in breach of (GBL) § 360-k and The Lanham Act ansl for use of a deceptively similar name in violation of (BCL) § 301(a)(2).

261.    Each of these parties have done this intentionally and with the knowledge that Korilla BBQ would be forced to close its business.

262.    The conduct of these parties was in manifest bad faith and designed to steal the business of Korilla BBQ.

263. Accordingly, these parties are liable to Korilla BBQ for their unfair business practices, in an amount to be determined at trial, jointly and severally, together with interests and costs.

264.    The conduct of these parties was shocking and intended to deprive Korilla BBQ of its business and assets while enriching these defendants.

265.    This conduct has in fact destroyed Korilla BBQ and irreparably injured plaintiffs.

266.    As such, punitive damages should be awarded at trial, but not less than $25 million, jointly and severally.

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor and against Defendants, jointly and severally as alleged in each Cause of Action, as follows:

a.    On their First Cause of Action, a derivative claim for an accounting by Edward of the revenues and profits of Korilla BBQ LLC and all of the Knockoff Korilla Businesses, as well as a complete accounting by all other Defendants (other than Esther Choi) of the revenues and profits of the Knockoff Korilla Businesses, and payment by Edward and such Defendants of all sums due Korilla BBQ LLC and all sums that they cannot account for;

b.    On their Second Cause of Action, an individual claim for breach of contract against Edward, damages in an amount not yet ascertainable but believed to be in excess of $5 million, as well as disgorgement by Edward of his ill-gotten gains and forfeiture of his compensation throughout his period of disloyalty under the faithless servant doctrine;

c.      On their Third Cause of Action, a derivative claim for breach of fiduciary duties to the Company against Edward, damages in an amount not yet ascertainable but believed to be in excess of $5 million, as well as disgorgement by Edward of his ill-gotten gains and forfeiture of his compensation throughout his period of disloyalty under the faithless servant doctrine;

d.      On their Fourth Cause of Action, a claim for breach of duties of loyalty and care to the Company against Edward, damages in an amount to be determined at trial but not less than $3 million, jointlyand severally, plus interest and costs;

e.      On their Fifth Cause of Action, a derivative claim for aiding a breach of fiduciary duties against William Song, William Edward Song, Byung Keun Song, Young Sun Song, Esther Choi, Hardy Chung, Korilla East Village Truck, Inc., White Tiger Named Korilla, LLC, LET Group LLC, Aegis 233 LLC, Aegis 42, LLC, Grand Koast LLC, Koast LLC, Kommissary LLC, 3E LLC and John Does 1 through 10 damages in an amount not yet ascertainable but believed to be in excess of $5 million, plus punitive damages;

f.      On their Sixth Cause of Action, an individual claim for unfair business practices against Edward Song, David Im, Hardy Chung, Korilla East Village Food Truck, Inc., White Tiger Named Korilla, LLC And Aegis 233 LLC, damages in an amount not yet determined or

ascertainable but believed to be not less than $5 million, injunctive relief, and an accounting of

Defendants' profits, plus punitive damages.

Dated: September 25, 2019
New York, New York

Respectfully submitted,

**SAMUEL GOLDMAN & ASSOCIATES**

By: _____
Samuel Goldman
200 Park Avenue; Suite 1700
New York, New York 10166
Tel. (212) 725-1400
Fax. (212) 725-0805
Email: sg@sgalaw.com
*Attorneys for Plaintiffs*

39

# EXHIBIT J



**Niall Harty <nharty@sgalaw.com>**

## Park v. Song

**Jacquelyne Gilman** <jgilman@sgalaw.com>                                    Wed, Oct 2, 2019 at 4:17 PM
To: LMorrison@m-t-law.com
Cc: Niall Harty <nharty@sgalaw.com>, SG <sg@sgalaw.com>

Dear Mr. Morrison,
We would like to know if you are accepting services for William Song and the new business entity Defendants. Please let me know as soon as you can.
Regards,
Jacquelyne Gilman
Legal Assistant

**Samuel Goldman & Associates**
200 Park Ave, Suite 1700
New York, New York 10166
Tel. 212-725-1400
Fax. 212-682-0278

Privacy Notice: The information contained in this e-mail, and any attachments hereto, are confidential and/or privileged, and intended solely for the specified addressee. If you are not the intended addressee, or if you received this message by error, please notify the sender and delete this e-mail from your computer. You may not use, permit the use, disclose, forward, transmit, or copy this e-mail or attachments, or portions thereof, without prior consent of sender.

# EXHIBIT K

SO ORDERED

_____ J.S.C.

HON. JENNIFER G. SCHECTER
                                    J.S.C.
                    10/15/19

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

------------------------------------------------------------------X

STEPHEN PARK, THOMAS YANG, PAUL LEE and
ANDREW CHANG, and ERIC YU all individually and on behalf
KORILLA BBQ, LLC,

                                    Plaintiffs,

            -against-

EDWARD SONG, DAVID IM, KORILLA EAST VILLAGE
TRUCK, INC, WHITE TIGER NAMED KORILLA, LLC,
LET GROUP, LLC, AEGIS 233 LLC, HARDY CHUNG,
BYUNG KEUN SONG, WILLIAM SONG, ESTHER CHOI,
AEGIS 42, LLC, GRAND KOAST LLC, KOAST LLC,
KOMMISSARY LLC, 3E LLC and JOHN DOES 1-10,

                                    Defendants,

            -and-

KORILLA BBQ, LLC

                                    Nominal Defendant.

------------------------------------------------------------------X

Index No. 650186/2017

STIPULATION TO STAY
PROCEEDINGS FOR
MEDIATION

WHEREAS, counsel for the plaintiffs, Samuel Goldman & Associates and counsel for the

defendants EDWARD SONG, DAVID IM, KORILLA EAST VILLAGE TRUCK, INC., WHITE

TIGER NAMED KORILLA LLC, LET GROUP LLC, AEGIS 233 LLC and HARDY CHUNG

("Original Defendants"), O'Donoghue PLLC, acknowledge that the parties desire to enter into

mediation in an effort to settle this case; and

WHEREAS, such parties understand and agree that such mediation efforts cannot take place

and this matter cannot be settled without the defendants providing plaintiffs with complete access to

the books and records (including the original books of entry) of the various businesses using or having

used the Korilla trademarks (including with limitation, "KBBQ"), and an understanding of the gross

revenues, expenses, profits, distributions, capital contributions and loans relating to such businesses,
on an ongoing basis;

IT IS HEREBY STIPULATED AND AGREED that the Original Defendants shall (a) grant
full access to an accountant designated by Plaintiffs to the complete books and records of the
corporate defendants (Koast LLC, Grand Koast LLC, 3E LLC, Kommissary LLC, Aegis 233 LLC,
Korilla East Village Truck, Inc., LET Group LLC and White Tiger Named Korilla LLC) and of any
other businesses which have used or are using the Korilla trademarks; (b) grant such accountant direct
access to the accountant(s) or bookkeeper(s) for such businesses and written instructions to the
accountant(s) or bookkeeper(s) for such entities to cooperate with plaintiffs' accountant and to assist
him in understanding the financial records of these entities, including issues relating to their accuracy
and completeness, and the back-up documentation for the entries in such books and records;

IT IS FURTHER STIPULATED AND AGREED that the accounting records shall, if
maintained in electronic form, such as QuickBooks, be made available electronically, in native form,
with remote entry access, with authority limited to reviewing and analyzing data, but not for changing
any data; that, if possible, all POS data shall be made available in electronic form, with remote read
only access; and all necessary programs, information and support for access to such data; and that all
other financial records, such as invoices and receipts, be made available in electronic form if
maintained in such form;

IT IS FURTHER STIPULATED AND AGREED that such accountant designated by
plaintiffs shall receive access to all such records and data on an ongoing basis:

IT IS FURTHER STIPULATED AND AGREED that counsel for the parties shall work
cooperatively to select a mediator, or if such cannot be done on consent, shall make a request to the
Mediation Office of the New York County Supreme Court for an appropriate mediator to be
appointed to assist the parties with such mediation being arranged during the pendency of the matter.

2

IT IS HEREBY CONSENTED by and between such parties that upon implementation of

the provisions in paragraphs 3 through 5 above, the above-action shall be effectively stayed for the

pendency of mediation, and no party nor their counsel shall be required to make any service, filings,

submissions or otherwise during such period until such time as the Court shall issue an Order

otherwise, with sufficient time to make any such service, filing or submission provided at the Court's

discretion.

IT IS FURTHER STIPULATED AND AGREED, that counsel for any party to this action

may restore this matter to the active calendar by request to the Court and the Court's agreement to

such restoration, in whatever manner the Court shall direct thereafter, but no motion or other formal

request nor a stipulation on consent shall be required to restore the matter.

Dated: October 8, 2019
New York, New York


Original Defendants' Counsel                                Plaintiffs' Counsel

                                                           *Samuel Goldman*

_____ /s_____                                        _____
KEVIN SEAN O'DONOGHUE                                       SAMUEL GOLDMAN
O'Donoghue PLLC                                            Samuel Goldman & Associates
43 West 43 Street, Ste. 92                                 200 Park Avenue; Suite 1700
New York, New York 10036                                   New York, NY 10166
646.450.2141                                               Tel - 212-725-1400
kevin@kodpllc.com                                          Fax - 212-682-0278
                                                           E-mail - sg@sgalaw.com


3

# EXHIBIT L



**Jacquelyne Gilman <jgilman@sgalaw.com>**

## Fwd: Extension of time to respond to Subpoena's

**Samuel Goldman** <sg@sgalaw.com>                                    Tue, Jan 7, 2020 at 4:31 PM
To: Jacqueline Gilman <jgilman@sgalaw.com>, Niall Harty <nharty@sgalaw.com>

---------- Forwarded message ---------
From: **Lawrence Morrison** <LMorrison@m-t-law.com>
Date: Fri, Dec 13, 2019 at 9:33 AM
Subject: Extension of time to respond to Subpoena's
To: Lawrence Morrison <LMorrison@m-t-law.com>, Samuel Goldman <sg@sgalaw.com>


Jin Woo Park
Brian Song Need an extension until next Tuesday to respond to the subpoenas.. Thank you Larry,
--
**Lawrence F. Morrison**

MORRISON + TENENBAUM PLLC
87 WALKER STREET, FLOOR 2, NEW YORK, NY 10013
TEL: 212-620-0938  |  FAX: 646-998-1972
WEB: www.m-t-law.com

Notice: The information contained in this email message may be privileged, confidential and protected from disclosure. If you are not the intended recipient of this communication or these attachments, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please notify the sender by reply email and delete the message and any attachments.


--
## Samuel Goldman & Associates

200 Park Avenue; Suite 1700
New York, NY 10166
Tel - 212-725-1400
Fax - 212-682-0278
E-mail - sg@sgalaw.com
Web: www.sgalaw.com

Privacy notice: The information contained in this e-mail, and any attachments hereto, are confidential and/or privileged, and intended solely for the specified addressee. If you are not the intended addressee, or if you received this message by error, please notify the sender and delete this e-mail from your computer. You may not use, permit the use, disclose, forward, transmit, or copy this e-mail or attachments, or portions thereof, without prior consent of sender.



**Jacquelyne Gilman <jgilman@sgalaw.com>**

---

## Fwd: Brian Song Subpoena

**Samuel Goldman** <sg@sgalaw.com>                                      Tue, Jan 7, 2020 at 4:32 PM
To: Niall Harty <nharty@sgalaw.com>, Jacqueline Gilman <jgilman@sgalaw.com>

---------- Forwarded message ---------
From: **SG** <sg@sgalaw.com>
Date: Wed, Dec 18, 2019 at 9:32 AM
Subject: Re: Brian Song Subpoena
To: Lawrence Morrison <LMorrison@m-t-law.com>
Cc: Ernesto Sierra <esierra@m-t-law.com>


Friday will be fine

Sent from my iPhone


> On Dec 18, 2019, at 9:29 PM, Lawrence Morrison <LMorrison@m-t-law.com> wrote:


I can but I'm our until Friday

On Wed, Dec 18, 2019 at 2:45 AM SG <sg@sgalaw.com> wrote:
Can you please send them over, either electronically or in paper version?

Thank you,

Sam

Sent from my iPhone


> On Dec 18, 2019, at 4:27 AM, Lawrence Morrison <LMorrison@m-t-law.com> wrote:


I have all of the docs responsive to your subpoena.

They are voluminous. Please let me know when you can come and review them.

Thank you,

Larry Morrison

--
**Lawrence F. Morrison**

MORRISON + TENENBAUM PLLC
87 WALKER STREET, FLOOR 2, NEW YORK, NY 10013
TEL: 212-620-0938  |  FAX: 646-998-1972
WEB: www.m-t-law.com

Notice: The information contained in this email message may be privileged, confidential and
protected from disclosure. If you are not the intended recipient of this communication or
these attachments, any dissemination, distribution or copying is strictly prohibited. If you

think that you have received this email message in error, please notify the sender by reply email and delete the message and any attachments.

--
**Lawrence F. Morrison**

MORRISON + TENENBAUM PLLC
87 WALKER STREET, FLOOR 2, NEW YORK, NY 10013
TEL: 212-620-0938 | FAX: 646-998-1972
WEB: www.m-t-law.com

Notice: The information contained in this email message may be privileged, confidential and protected from disclosure. If you are not the intended recipient of this communication or these attachments, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please notify the sender by reply email and delete the message and any attachments.

--
## Samuel Goldman & Associates

200 Park Avenue; Suite 1700
New York, NY 10166
Tel - 212-725-1400
Fax - 212-682-0278
E-mail - sg@sgalaw.com
Web: www.sgalaw.com

Privacy notice: The information contained in this e-mail, and any attachments hereto, are confidential and/or privileged, and intended solely for the specified addressee. If you are not the intended addressee, or if you received this message by error, please notify the sender and delete this e-mail from your computer. You may not use, permit the use, disclose, forward, transmit, or copy this e-mail or attachments, or portions thereof, without prior consent of sender.



**Jacquelyne Gilman <jgilman@sgalaw.com>**

---

# Mr Park
6 messages

---

**Lawrence Morrison** <LMorrison@m-t-law.com>                    Fri, Dec 20, 2019 at 11:22 AM
To: Lawrence Morrison <LMorrison@m-t-law.com>, jgilman@sgalaw.com

Mr. park is asked us to handle his document production as well. We are assembling and can turn this over to you next week.
--
**Lawrence F. Morrison**

MORRISON + TENENBAUM PLLC
87 WALKER STREET, FLOOR 2, NEW YORK, NY 10013
TEL: 212-620-0938  |  FAX: 646-998-1972
WEB: www.m-t-law.com

Notice: The information contained in this email message may be privileged, confidential and protected from disclosure. If you are not the intended recipient of this communication or these attachments, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please notify the sender by reply email and delete the message and any attachments.

---

**Jacquelyne Gilman** <jgilman@sgalaw.com>                    Fri, Dec 20, 2019 at 11:23 AM
To: Lawrence Morrison <LMorrison@m-t-law.com>
Cc: SG <sg@sgalaw.com>, Niall Harty <nharty@sgalaw.com>

Okay great thank you.
Kind Regards,
Jacquelyne Gilman
Legal Assistant

**Samuel Goldman & Associates**
200 Park Ave, Suite 1700
New York, New York 10166
Tel. 212-725-1400
Fax. 212-682-0278

Privacy Notice: The information contained in this e-mail, and any attachments hereto, are confidential and/or privileged, and intended solely for the specified addressee. If you are not the intended addressee, or if you received this message by error, please notify the sender and delete this e-mail from your computer. You may not use, permit the use, disclose, forward, transmit, or copy this e-mail or attachments, or portions thereof, without prior consent of sender.

[Quoted text hidden]

---

**Jacquelyne Gilman** <jgilman@sgalaw.com>                    Thu, Jan 2, 2020 at 10:17 AM
To: Lawrence Morrison <LMorrison@m-t-law.com>
Cc: SG <sg@sgalaw.com>, Niall Harty <nharty@sgalaw.com>

Mr. Morrison,
when will we have the production from Mr. Park? What about Mr. Song's production? Please let me know when you can and happy new year!
Kind Regards,
Jacquelyne Gilman
Legal Assistant

**Samuel Goldman & Associates**

200 Park Ave, Suite 1700
New York, New York 10166
Tel. 212-725-1400
Fax. 212-682-0278

Privacy Notice: The information contained in this e-mail, and any attachments hereto, are confidential and/or privileged, and intended solely for the specified addressee. If you are not the intended addressee, or if you received this message by error, please notify the sender and delete this e-mail from your computer. You may not use, permit the use, disclose, forward, transmit, or copy this e-mail or attachments, or portions thereof, without prior consent of sender.

[Quoted text hidden]

---

**Samuel Goldman** <sg@sgalaw.com>                                    Fri, Jan 3, 2020 at 10:25 AM
To: Lawrence Morrison <LMorrison@m-t-law.com>, Kevin O'Donoghue <kevin@kodpllc.com>
Cc: Niall Harty <nharty@sgalaw.com>, Jacquelyne Gilman <jgilman@sgalaw.com>

The Brian Song and Jin Woo Park documents were intended to aid in the settlement of this matter by providing us with the financial information needed to settle. Are you maintaining that the filing by you of the Aegis 42 Bankruptcy Petition stays their production?

Regards,

Sam
[Quoted text hidden]
--
## Samuel Goldman & Associates

200 Park Avenue; Suite 1700
New York, NY 10166
Tel - 212-725-1400
Fax - 212-682-0278
E-mail - sg@sgalaw.com
Web: www.sgalaw.com

Privacy notice: The information contained in this e-mail, and any attachments hereto, are confidential and/or privileged, and intended solely for the specified addressee. If you are not the intended addressee, or if you received this message by error, please notify the sender and delete this e-mail from your computer. You may not use, permit the use, disclose, forward, transmit, or copy this e-mail or attachments, or portions thereof, without prior consent of sender.

---

**Lawrence Morrison** <LMorrison@m-t-law.com>                          Fri, Jan 3, 2020 at 12:25 PM
To: Samuel Goldman <sg@sgalaw.com>
Cc: Jacquelyne Gilman <jgilman@sgalaw.com>, Kevin O'Donoghue <kevin@kodpllc.com>, Niall Harty
<nharty@sgalaw.com>

Hi Samuel:
Yes all matters are stayed because this is property of the debtor.
We may ask the Thank of Secour to appoint a mediator to try to finalize the settlement with your group. Thank youTy
[Quoted text hidden]

---

**Samuel Goldman** <sg@sgalaw.com>                                    Fri, Jan 3, 2020 at 12:48 PM
To: Lawrence Morrison <LMorrison@m-t-law.com>
Cc: Jacquelyne Gilman <jgilman@sgalaw.com>, Kevin O'Donoghue <kevin@kodpllc.com>, Niall Harty
<nharty@sgalaw.com>

What do you mean?

The purpose of the financial disclosure was so that we could mediate. Edward himself made partial disclosure and promised us the Brian Song and Jin Woo Park documents.

Sam

[Quoted text hidden]

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

............................................................... X

In re:                                                      :

                                                            :          Chapter 11

                                                            :

AEGIS 42, LLC                                               :

                                                            :          Case No.  1-19-47698-ess

                                                            :

                        Debtor.                             :

............................................................... X

**MOTION TO DISMISS CHAPTER 11 CASE AS FILED IN BAD FAITH**
**AND TO REMAND THE REMOVED LAWSUIT TO THE STATE COURT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... ii

**PRELIMINARY STATEMENT** ................................................................................ 1

**BACKGROUND FACTS** .......................................................................................... 4

**ARGUMENT** ............................................................................................................ 9

    **POINT I** ............................................................................................................... 9

    **POINT II** ............................................................................................................ 11

      **THE REMOVAL OF THE STATE COURT ACTION WAS IMPROPER AND** ............. 11

      THE CASE SHOULD THEREFORE BE REMANDED ........................................... 11

    **POINT III** .......................................................................................................... 12

      **ABSTENTION IS MANDATORY UNDER SECTION 1334(c)(2)** ...................... 12

    **POINT IV** .......................................................................................................... 13

      **THE COURT IN ITS DISCRETION SHOULD ABSTAIN UNDER SECTION 1334(c) (1)** ..................................................................................................................... 13

    **POINT V** ............................................................................................................ 15

    **POINT VI** .......................................................................................................... 16

      **SANCTIONS SHOULD BE IMPOSED ON MORRISON AND EDWARD** ..................... 16

      **FOR THEIR FRAUDULENT AND BAD FAITH FILING AND REMOVAL** ................... 16

**CONCLUSION** ........................................................................................................ 17

## TABLE OF AUTHORITIES

**Cases**

*BGC Partners Inc. v. Avison Young (Can.), Inc.*, 2013 WL 238163.................................................. 17

*CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 607 (S.D.N.Y.
2008) ........................................................................................................................................ 18

*C-TC 9TH Ave. Partnership v. Norton Co. (In re C-TC 9TH Ave. Partnership),* 113 F.3d 1304 (2d
Cir. 1997) .................................................................................................................................. 11

*In re Abir,* 2010 U.S. Dist. LEXIS 28471, 2010 WL 1169929, at *7 (E.D.N.Y. Mar. 22, 2010 ........ 16

*In re Bradlees Stores, Inc.*, 311 B.R. 29, 34 (Bankr. S.D.N.Y. 2004)................................................. 14

*In re HBA East, Inc.,* 87 B.R. 248, 258-59 (Bankr. E.D.N.Y. 1988). ................................................. 12

*In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) ............................... 13

*In re Liberate Technologies,* 314 B.R. 206 (Bankr. N.D. Cal. 2004)................................................... 12

*In re Little Creek Dev. Co.,* 779 F.2d 1068, 1073 (5th Cir. 1986). ..................................................... 12

*In re New 118th LLC*, 396 B.R. 885, 892-93 (Bankr. 2013 Bankr. LEXIS 1008, *18, S.D.N.Y. 2008).
....................................................................................................................................... 17

*In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 520 (Bankr.
S.D.N.Y. 1996) .......................................................................................................................... 13

*In re SGL Carbon Corporation,* 200 F.3d ...................................................................................... 12

*Int'l Tobacco Partners*, 462 B.R. 378.............................................................................................. 16

*Lead I JV, LP v. North Fork Bank*, 401 B.R. 571............................................................................. 17

*Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 60 (S.D.N.Y. 2011) ................................................. 17

*Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446–47 (2d Cir. 2005) .................................. 14

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011)......................... 15

*Whitney Lane Holdings, LLC v. Don Realty, LLC*, 2010 WL 1257879 ............................................. 17

**Statutes**

28 U.S.C. § 1452 ........................................................................................................... 17

Section 1112 of the Bankruptcy Code ........................................................................... 11

Section 1334 ................................................................................................................. 14

TO THE HONORABLE ELIZABETH S. STRONG,
UNITED STATES BANKRUPTCY JUDGE:

STEPHEN PARK, THOMAS YANG, PAUL LEE, ERIC YU AND ANDREW CHANG,

Plaintiffs (hereinafter "Plaintiffs") in the State Court Action (defined below), through their

undersigned counsel, Samuel Goldman & Associates ("SGA"), hereby move for an order (a)

dismissing this Chapter 11 case as filed in bad faith, (b) remanding  the case of *Park v. Song*, which

was pending in the New York State Supreme Court, New York County under Index No. 650186/2017

("the "State Court Action") until removed to this Court on January 6, 2020 Court, on the grounds that

(i) this case was filed in bad faith, (ii) the removal was in bad faith, (iii) this Court's jurisdiction over

the State Court Action was not established, (iv)_mandatory abstention applies, and (v) discretionary

abstention is warranted, (c) awarding sanctions against Debtor's counsel, Lawrence F. Morrison

("Morrison") and the Debtor's purported President and Managing Member, Edward Song ("Edward")

for their false, fraudulent and bad faith filings and removal, and (d) and granting such other and further

relief as is just and necessary.

## PRELIMINARY STATEMENT

1.     This Chapter 11 case was filed and the State Court Action removed in bad faith, in

a blatant attempt to disrupt and delay the State Court Action and forestall the imminent disclosure,

of the financial books and records of various business entities that have been operating KORILLA-

branded businesses in violation of the rights of Korilla BBQ, LLC (these are referred to as the

"Knockoff Korilla Businesses").  Plaintiffs, who are non-managing members of Korilla BBQ,

LLC, have been seeking this information in the State Court Action for at least two years.  Edward,

the managing member, who they are suing for looting, breach of the operating agreement and  his

fiduciary duties for misappropriating the Korilla BBQ business, trademarks and intellectual

1

property and establishing the many Knockoff Korilla Businesses, has resolutely refused to provide information about these Businesses even under threat of severe sanctions.

2.    As a result, Plaintiffs were forced to subpoena Knockoff Korilla Businesses' accountants and/or bookkeepers, Jin Woo Park ("Jin") and Brian Song ("Brian"), for these books and records. After Jin and Brian's formidable efforts to evade service of the document subpoenas failed, they retained attorney Morrison ostensibly to represent them in connection with this production. At the time that they retained Morrison, litigation in the case was suspended so settlement negotiations and mediation could take place. All parties agreed in a Stipulation that the books and records would be produced so settlement negotiations could be productive. The State Court Judge "so ordered" the Stipulation. Morrison promised that Jin's and Brian's production would be made before the end of December 2019 so settlement negotiations and mediation could begin.

3.    Instead of producing the books and records as he had promised, on December 23, 2019, Morrison filed a Chapter 11 Petition on behalf of Aegis 42, LLC, a *non-party* in the State Court Action, and asserted that this filing stayed production. The Petition was signed by Edward, as President and Managing Member of the Debtor, Aegis 42, LLC [Dkt. 1], notwithstanding that he had maintained under oath that he had no role in Aegis 42, LLC or any of the other entities operating KORILLA branded businesses, other than as an "unpaid consultant" and notwithstanding his agreement in the Stipulation to produce the books and records.

4.    On January 6, 2020, Morrison removed the State Court Action to this Court.

5.    The Petition stated that the "Debtor's immediate need for relief stems from its serious cash flow difficulties resulting from defending [the State Court Action]." (*See* Declaration Pursuant to EDNY Local Bankruptcy Rule 1007-4 [Dkt. 1], Par. 6). But this could not have been true,

since Aegis 42, LLC was not a party to the State Court Action and could not have been "defending" it. Further, all litigation has been in abeyance since September 2019, when the State Court first permitted Plaintiffs to add Aegis 42, LLC as a party.

6.      The Debtor has almost no debts and is not in need of financial relief [*See* Dkt. 7].

7.      The Notice of Removal, signed by Morrison, stated that the Bankruptcy Court's intervention was necessary to protect the Debtor with respect the certain guarantees and that "[e]ach claim and cause of action in [the State Court Action] is related to the Chapter 11 case of Aegis 42, LLC."[1] But the State Court Action has nothing to do with guarantees and none of the live claims have anything to do with Aegis 42, LLC.[2]

8.      The filing and removal are clearly in bad faith as demonstrated by the fact that the Debtor is using the automatic stay and removal as litigation tactics, the Debtor shows no need for reorganization and the reasons given for the filing and removal are clearly false and fraudulent. Further, even if the Petition and the Notice of Removal had not been in bad faith, remand would still be warranted under the rules relating to mandatory and discretionary abstention. This is a State law dispute, that involves many parties and many claims that have no connection to Aegis 42, LLC and it should be resolved in the State Supreme Court, where it has been pending for three years.

---

[1] The Notice of Removal is annexed as Exh. A to the Affirmation of Samuel Goldman ("Goldman Aff."), submitted with this motion. Unless otherwise indicated, all other Exhibits referred to herein are annexed to the Goldman Aff.

[2] The claims in the Third Amended Complaint are:

**First**: Against Edward for an accounting;

**Second**: Against Edward for breach of the Korilla BBQ, LLC Operating Agreement;

**Third**: Against Edward derivatively for breach of his fiduciary duties to Korilla BBQ, LLC;

**Fourth**: Against Edward individually for breach of fiduciary duties;

**Fifth**: Against William Song (Edward's brother), Byung Keun Song (Edward's father), Esther Choi, Hardy Chung, Korilla East Village Truck, Inc., White Tiger Named Korilla, LLC, LET Group LLC, Aegis 233 LLC, Aegis 42, LLC, Grand Koast LLC, Koast LLC, Kommissary LLC, 3e LLC, and John Does 1 Through 10 derivatively for aiding and abetting Edward's breach of his fiduciary duties to Korilla BBQ, LLC; and

**Sixth**: Against Edward, David Im, Hardy Chung, Korilla East Village Truck, Inc., White Tiger Named Korilla, and Aegis 233, LLC derivatively for unfair business practices.

9.      Because the bankruptcy filing and removal were in bad faith and based on untruthful statements, the Court should sanction Morrison and Edward, and award Plaintiffs their costs and expenses, including attorney's fees.

### BACKGROUND FACTS

10.      The State Court Action was commenced on January 11, 2017 by non-managing members of Korilla BBQ LLC against its managing member, Edward, for violation of the Company's operating agreement and Edward's fiduciary duties.[3]  The Complaint alleged that Edward had looted Korilla BBQ, LLC (a claim which he has at least partially admitted) and, that after his looting was exposed, he put Korilla BBQ, LLC out of business and started a series of new businesses using the trademarks and intellectual property of Korilla BBQ, LLC, with Korilla BBQ, LLC and its members excluded.  At the time the Complaint was filed, Plaintiffs were aware of several individuals that had aided Edward in his looting and misappropriation, as well as two of the new KORILLA businesses, a restaurant owned by Aegis 223, LLC and a food truck owned by Korilla East Village Truck, Inc. ("KEVT").  They named them as defendants.  After the lawsuit was filed, Plaintiffs became aware of many more businesses operating under the KORILLA trademarks.

11.      Edward denied any interest in these businesses or any knowledge of their activities and finances.  He claimed that he had caused Korilla BBQ, LLC to assign the KORILLA trademark to LET Group, Inc., a company he owned, and that LET had granted royalty-free licenses (almost all oral) to various entities to operate KORILLA-branded businesses.[4]

12.      Edward claimed that Defendant Hardy Chung owned and operated Aegis 233, LLC and KEVT, and that Edward's brother, William, owned and operated the other Knockoff Korilla

---

[3] See Complaint dated February 27, 2017, annexed as Exhibit B
[4] Edward's Response to Plaintiffs' Second Demand for Interrogatories, Exh. C, ¶ 6.

4

Businesses.  He asserted that he had no interest in any of these companies and served only as licensor through LET and as an unpaid consultant.[5] He stated that he could not even identify Knockoff Korilla Businesses or provide any financial information about them. Edward defied a number of Court orders directing him to divulge this information and produce documents relating to the Knockoff Korilla Businesses.[6]

13.    Plaintiffs were forced to engage in a lengthy investigative process and third-party discovery to uncover the Knockoff Korilla Businesses.  One of these businesses was a KORILLA restaurant located at Metrotech Center in Brooklyn, which discovery showed was being operated by either Kommissary, LLC or Aegis 42, LLC, entities Edward had said were owned and operated by William.[7]  Plaintiffs served a document subpoena, personally signed by the Judge, on William.[8] William ignored it and various Court orders until the Judge directed Defendants' counsel, Kevin O'Donoghue, to tell William that he would be held in contempt and could be thrown in jail if he did not comply.[9]

14.    William retained Morrison to represent him in connection with his production, and on June 24, 2019, Morrison produced documents on behalf of William, including documents belonging to Aegis 42, LLC.[10]

---

[5] Exh. C, ¶ 5.
[6] See, e.g., Order dated April 10, 2018, annexed as Exh. D, in which the Court stated:
> For the avoidance of all doubt, defendants shall not withhold any discovery on the ground that some or all of the currently operating food trucks or restaurants are owned by LLCs that either are not named defendants or in which plaintiffs are not members. All "Korilla" companies are fair game for discovery in light of plaintiffs' allegation that they have rights in the Korilla name, which they claim was wrongfully misappropriated from them and/or their business.

See also the Orders of August 3, 2018, annexed as Exh. E.
[7] Exh. C ¶¶ 3 and 4.
[8] Subpoena Exh. F.
[9] See Order dated April 3, 2019, annexed as Exh. E, in which the Court stated:
> If William Song does not fully comply with the subpoena by 4/12/19, he will be held in civil contempt and forced to pay the reasonable attorney's fees spent by [Plaintiffs] in making this motion, and, if he still has not complied by 4/28/19, [Plaintiffs] may submit a proposed arrest warrant providing for his incarceration until such time that he complies with the subpoena.

[10] See Exh. G.

15.    On September 5, 2019, the Court issued an order permitting Plaintiffs to add William and the newly discovered Knockoff Korilla Businesses, including Aegis 42, LLC, as defendants in this action on a derivative claim that they had aided and abetted Edward's breach of fiduciary duties.[11]

16.    Plaintiffs filed their First Amended Complaint on September 25, 2019,[12] and asked Morrison, who was already representing William on discovery, if he would accept service on behalf of William and the other new defendants including Aegis 42, LLC, who purportedly were owned and operated by William.[13] Mr. Morrison responded by telephone that he was 'waiting to hear from Mr. Green' [i.e., to get paid] and that he would let us know. He never did. [14]

17.    In the meanwhile, at the Court's suggestion, the parties agreed to suspend litigation activities and engage in mediation. They entered into a Stipulation dated October 8, 2019 to that effect, which was "so ordered" by the Court on October 25, 2019.[15]  The So-Ordered Stipulation provided that since mediation efforts could not take place without giving Plaintiffs "complete access to the books and records (including the original books of entry) of the various businesses using or having used the Korilla trademarks," Defendants would produce such books and records and provide access to their accountants to explain them.[16]

18.    As a result of the So-Ordered Stipulation, efforts to serve the newly named Defendants, or to have Mr. Morrison accept service for them, were suspended and Aegis 42, LLC remains unserved.

19.    After the Stipulation was so-ordered, Edward produced a spreadsheet containing some financial information, but not the books and records; he claimed that he was unable to obtain them from the accountants and bookkeepers. Plaintiffs then served subpoenas for the books and records on

---

[11] See Decision and Order dated September 5, 2019 Exh. H.
[12] Exh. I.
[13] See email from Jacquelyne Gilman, a paralegal at SG&A dated October 2, 2019, Exh. J.
[14] See Goldman Aff. submitted herewith.
[15] Exh. K.
[16] *Id.*, Par. 2.

Jin and Brian (whose identities and been revealed in discovery). Both had tried extremely hard to evade service, but ultimately were served. Morrison then informed Plaintiffs' counsel that he had been retained by both to assist them in making production. He promised that he would be doing so before the end of December 2019.[17]

20.    On December 23, 2019. Morrison filed the Chapter 11 Petition in this case. He clearly knew that Aegis 42, LLC was not a party to the litigation, since he had refused to accept service for it. He asserted that the filing stayed the disclosure of the financial information by Jin and Brian relating to all of the Knockoff Korilla Businesses, because it was "property of the Debtor."[18] He then removed the State Court Action to the Bankruptcy Court, notwithstanding Plaintiffs' warning that to do so would be improper.

21.    Edward, who he had consistently maintained that he had no role in Aegis 42, LLC other than as an unpaid consultant, signed the bankruptcy papers as President and Managing Member.

22.    The Petition contained multiple untrue statements. It alleged that Aegis 42, LLC needed relief under Chapter 11 because of "its serious cash flow difficulties resulting from defending an action in New York State Supreme Court." But, Aegis 42 never had anything to defend. The State Court did not permit Plaintiffs to add Aegis 42 as a defendant until September 5, 2019,[19] and it had not been served. Further, there was no activity in the State Court action since September, except for the effort to obtain the financial disclosure provided for in the Stipulation. Thus, the reason given for the bankruptcy filing was patently false.[20]

---

[17] See email exchange between Morrison and SGA, attached as Exh. L.
[18] See Morrison's email dated January 3, 2019, Exh. L.
[19] See Exh. H
[20] To the extent that Aegis 42's resources were used to pay legal fees, this was to defend Edward and wrongful; these funds should be repaid to Aegis 42. To the extent that Aegis 42 paid a retainer to Mr. Morrison to file the petition, this too is wrongful as the purpose of the petition was to stay discovery from non-party accountants and/or bookkeepers in the State Court Action. It too should be repaid forthwith.

23.     Aegis 42's Schedule of Creditors showed that Aegis has almost no real creditors and no need to reorganize. Aegis 42' dominant creditor is listed as Young Sun Song, Edward's mother, who according to him in the Bankruptcy filing, owned 100% of the Debtor's equity.[21] Another alleged creditor is Kommissary LLC, a Knockoff Korilla Business purportedly owned by Edward, and thus, related to Aegis 42, LLC.  The five Plaintiffs are listed as creditors, but they are not really creditors. They brought derivative claims primarily against Edward and the one claim that names Aegis 42, LLC is contingent on proving Plaintiffs' claim for breach of fiduciary duties against Edward.  There are no trade creditors, so Aegis 42, LLC appears to be paying its monthly expenses on time.  The only other scheduled debts are unliquidated claims of $32,000 to the landlord and $5,000 to BLD Corp., which apparently did some construction work for Aegis 42, LLC.  These do not indicate a Debtor in need of reorganization, and they cannot justify the expenditure of time and money entailed in a reorganization proceeding.

24.     Morrison filed the Notice of Removal on January 6, 2020.  It is on its face fraudulent and in bad faith.  He grossly mispresents the nature of the State Court action and the claims against the Debtor.[22]  In paragraph 1, he states:

> This action involves claims brought against Defendant [defined as Aegis 42] by Plaintiffs, for damages that allegedly resulted from stealing Korilla BBQ's intellectual property, and illicitly transferring that property to defendants. The amount of damages alleged are an amount to be determined at trial but not less than $5 million.

In Par. 3, he states that the reason the removal is necessary is that the issue in the State Court Action relates to guarantees by the Debtor. But there are no such guarantees and his statements are designed

---

[21] Edward had sworn in the State Court Action that the owner of Aegis 42, LLC was William.  Other documents indicated it was Byung Keun Song, Edward's father.

   When Edward was caught transferring funds from the Korilla BBQ, LLC account and to his parents' accounts, he claimed that these were repayments of loans. But there was never any evidence that these loans had actually been made; the only evidence was of payments being directed by Edward into accounts owned of record by his parents.

[22] See Exh. A

to make it appear that there are bankruptcy related issues at the heart of the State Court Action, when in fact there are none.   In Par. 4, he states: "Each claim and cause of action in this action is related to the Chapter 11 case of Aegis 42, LLC."  This is blatantly untrue.

## ARGUMENT

### POINT I

### <u>THIS CASE WAS FILED IN BAD FAITH AND SHOULD BE DISMISSED</u>

25.    Although Section 1112 of the Bankruptcy Code does not explicitly state that bad faith is a ground for dismissal of a chapter 11 case, it is well established that a court may dismiss a case for being filed in bad faith. C-*TC 9TH Ave. Partnership v. Norton Co. (In re C-TC 9TH Ave. Partnership),* 113 F.3d 1304 (2d Cir. 1997). This principle is supported by the broad wording of Section 1l12(b) which provides that the court "may dismiss a case under this chapter ... for cause." The requirement that a case be filed in good faith has long been the policing mechanism used by bankruptcy courts to make certain that those who invoke the reorganization provisions of the Bankruptcy Code do so only to accomplish the aims and objectives of reorganization and for no other purpose. *In re HBA East, Inc.,* 87 B.R. 248, 258-59 (Bankr. E.D.N.Y. 1988).

26.    The purpose of Chapter 11 is to assist financially distressed businesses and individuals to rehabilitate. *In re Little Creek Dev. Co.,* 779 F.2d 1068, 1073 (5th Cir. 1986). A debtor must have financial distress and a need for bankruptcy relief. *In re SGL Carbon Corporation,* 200 F.3d at 163; *In re Liberate Technologies,* 314 B.R. 206 (Bankr. N.D. Cal. 2004).

27.    When a Chapter 11 case is filed as a litigation tactic by a person who does not need financial relief, that case is filed in bad faith. *In re SGL Carbon Corporation,* 200 F.3d at 165-66; *Liberate Technologies,* 314 B.R. at 212-13. The Bankruptcy Code is "not intended to be used as  a mechanism to orchestrate pending litigation." *HBA East,* 87 B.R. at 259-60. In *SGL Carbon,* the

debtor filed to gain an advantage in pending antitrust litigation and was not experiencing financial distress. In *Liberate Technologies,* the court dismissed the case even though the debtor might have to liquidate assets if it lost pending patent infringement litigation. In *C-TC,* the Second Circuit affirmed dismissal of a case where the petition was filed as a litigation tactic, the dispute could be resolved in a non-bankruptcy forum, and the debtor did not intend to reorganize.  113 F.3d at 1309-10.

28.    Edward and Morrison filed this case in bad faith as a litigation tactic in an attempt to "orchestrate" and interfere with pending litigation. They filed this case at the same time that Edward and Morrison had promised that they would be producing financial documents so settlement talks and mediation could take place.  There was nothing else going on in the case at that time since litigation had been suspended pending settlement efforts.

29.    Yet, Edward and Morrison used the bankruptcy filing to stay the litigation, including document production and settlement negotiations, and then removed the case, ostensibly because Aegis 42, LLC couldn't afford non-existent litigation expenses and needed to protect itself from the collection of non-existent guarantees.  They sought to prevent Jin and Brian from producing financial documents needed so settlement efforts could take place.

30.    Plaintiffs asserted only state law claims in the State Court Action and none of the claims in that action could have been commenced in a federal court. These State law claims have been pending for three years, and numerous hearings were held, orders were issued, and discovery was conducted.  The case had reached the point where informed settlement discussions – agreed to by the parties and the Court - were about to take place.

31.     Further, the Debtor has few, if any, true creditors and is not in need of bankruptcy relief. "[T]he standard in this Circuit is that a bankruptcy petition will be dismissed if both objective futility of the reorganization process and subjective bad faith in filing the petition are found." *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) (emphasis in original); *see also In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996). The Debtor does not need bankruptcy relief and Morrison and Edward Song filed this case in bad faith and not for a legitimate bankruptcy purpose. The Debtor's Chapter 11 case should be dismissed.

## POINT II

### THE REMOVAL OF THE STATE COURT ACTION WAS IMPROPER AND THE CASE SHOULD THEREFORE BE REMANDED

32.     The Notice of Removal filed by Morrison is on its face a false and fraudulent document and not filed in good faith.  It falsely states that Aegis 42, LLC is a party to the State Court Action and that it needs the Bankruptcy Court's help because of "cash flow difficulties in defending [the State Court Action]" and to be relieved of liability under "alleged guarantees." It states that "[e]ach claim and cause of action in this action is related to the Chapter 11 case," when this is plainly not true.[23]

33.     Further, the burden is on the debtor to establish the Bankruptcy Court's jurisdiction over a matter being removed and Aegis 42, LLC has not met this burden because Morrison's stated reasons for removal have no basis in reality. Thus, the removal was improper, and the case should be remanded to the State Court.

---

[23] See Ex. A, ¶ 4.

## POINT III

## ABSTENTION IS MANDATORY UNDER SECTION 1334(c)(2)

34.    A court must abstain pursuant to Section 1334(c)(2) if the following six conditions are satisfied:

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; (6) that action can be "timely adjudicated" in state court.

*In re Bradlees Stores, Inc.*, 311 B.R. 29, 34 (Bankr. S.D.N.Y. 2004); *see also Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446–47 (2d Cir. 2005) (specifying that principles of mandatory abstention apply to removed actions).

35.    Applying this test demonstrates that abstention is mandatory and would be even if Aegis 42 had been served in the State Court Action and was a party. The motion to abstain is timely, having been brought days after the removal. The action is based on state law claims relating to breach of a limited liability company operating agreement and breach of fiduciary duties.  Even if the action were deemed to be "related to" the bankruptcy case, [24] it is not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code.  Section 1334 provides the sole basis for federal jurisdiction, as the action could not be brought in federal court on any other jurisdictional basis.  The action is commenced in state court. There is no reason to believe that the action cannot be "timely adjudicated" in state court.

36.    With respect to the sixth factor, whether an action can be timely adjudicated in state court, the Second Circuit Court of Appeals has identified four factors for courts to consider: (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy

---

[24] It is unnecessary to address this issue on this motion.

proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate. *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011).

37.     This case is pending in the Commercial Division of the State Supreme Court, and before litigation was suspended, the Court had indicated that it wants the case ready for trial within a matter of months.  Thus, there appears to be no backlog.  The issues are all State Court issues in which the Bankruptcy Court has no advantage in expertise. The Chapter 11 Case is just beginning, and it will not be prolonged given the fact that the State Court Action is almost ready for trial.  In short, the action can be "timely adjudicated" in State Court, and abstention is thus mandatory.

### POINT IV

### <u>THE COURT IN ITS DISCRETION SHOULD ABSTAIN UNDER SECTION 1334(c) (1)</u>

38.     Should the Court find that abstention is not mandatory, it should still abstain under 28 U.S.C. § 1334(c)(1), which allows for discretionary abstention.   That section states, in pertinent part, "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

39.     When determining whether to permissively abstain, the Court considers one or more of the following twelve factors: (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the

feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of [the court's] docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties. *Int'l Tobacco Partners*, 462 B.R. 378 at 392 (quoting Wider, 2009 Bankr. LEXIS 3981, 2009 WL 4345411, at *6-7). "Permissive abstention under Section 1334(c)(1) is within the sound discretion of the bankruptcy court." *In re Abir,* 2010 U.S. Dist. LEXIS 28471, 2010 WL 1169929, at *7 (E.D.N.Y. Mar. 22, 2010); see *In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002); *Wallace*, 2009 U.S. Dist. LEXIS 91284, 2009 WL 3171767, at *2.

40.    The bulk of these factors weigh heavily in favor of permissively abstaining from hearing the State Court Action, pursuant to 28 U.S.C. § 1334(c)(1). Specifically, (1) there will be no significant detrimental effect on the efficient administration of Debtor's case if the Court abstains; the case will likely be decided much sooner in the State Court; (2) state law issues predominate and are, in fact, the sole determining legal questions in the State Court Action; (4) there is a pending proceeding in the State Court that was getting close to trial when Debtor's case was commenced; (5) there is no basis other than 28 U.S.C. § 1334 for this Court to exercise jurisdiction over this purely state law action; (6) the State Court Action is not closely related to the main bankruptcy case but involves a discrete set of state law issues; since the claim against the Debtor relate to aiding and abetting Edward's breaches, its potential liability is secondary and its role in the case would be limited; (7) there is no basis to assert that this is a core proceeding; (8) severing the state law claims from core bankruptcy matters is easily accomplished to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the State Court Action is far more intensive and complex than the issues in the bankruptcy case would appear to be; (10) it is extremely likely that the purpose of the filing is to delay resolution

of the State Court Action by bringing it to a new forum unfamiliar with the case; (11) a right to a jury trial exists, and (12) the State Court Action involves multiple non-debtor parties. Finally, none of the twelve factors weighs strongly against permissively abstaining. Thus, permissive abstention is warranted.

## POINT V

## THE COURT SHOULD REMAND THE STATE COURT ACTION

41.    Remand is both permissible and advisable where a removed action was pending in state court pre-petition and where the federal court has determined to abstain. See, e.g., *Parmalat*, 639 F.3d 572 at 582; *BGC Partners Inc. v. Avison Young (Can.), Inc.*, 2013 WL 238163, at *6-7; *Lead I JV, LP v. North Fork Bank*, 401 B.R. 571 at 585-87; *In re New 118th LLC*, 396 B.R. 885, 892-93 (Bankr. 2013 Bankr. LEXIS 1008, *18, S.D.N.Y. 2008). Second, in considering a remand request, courts generally apply the same test to determine whether to remand an action "on any equitable ground" under 28 U.S.C. § 1452(b) as is applied to determine whether to permissively abstain under 28 U.S.C. § 1334(c)(1). *See Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 60 (S.D.N.Y. 2011) ("The two inquiries are essentially the same and are often analyzed together."); *Whitney Lane Holdings, LLC v. Don Realty, LLC*, 2010 WL 1257879, at *7; *CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 607 (S.D.N.Y. 2008). Accordingly, when a court has determined to permissively abstain from a removed action, remand of the action back to the state court from which the action was removed is generally the appropriate outcome. *See Little Rest Twelve*, 458 B.R. at 60-61. Thus, the State Court Action should be remanded.

## POINT VI

### SANCTIONS SHOULD BE IMPOSED ON MORRISON AND EDWARD
### FOR THEIR FRAUDULENT AND BAD FAITH FILING AND REMOVAL

42.    Sanctions should be imposed on Morrison and Edward pursuant to Federal Rule of Bankruptcy Procedure 9011, 28 U.S.C. §1927, and 11 U.S.C. §105 28 U.S.C. §1447(c) for costs and expenses, including attorney's fees. When a case is dismissed as being filed in bad faith and never should have been filed, the court may impose sanctions on the Debtor and his counsel, by directing the Debtor and his counsel to pay costs and expenses, including attorney's fees. *In re St. Stephen's 350 East 116th St.,* 313 B.R. 161, 170 (Bankr. S.D.N.Y. 2004); *In re Intercorp Intern.,* 309 B.R. 696 (Bankr. S.D.N.Y. 2004).  Courts often apply the same standards to the sanctions motion as to the dismissal for bad faith motion. *St. Stephens,* 313 B.R. at 170; *Intercorp,* 309 B.R at 692-93, *citing In re Cohoes Indust. Terminal, Inc.,* 931 F.2d 222, 227-28 (2d Cir. 1991). When the actions of the debtor show that the debtor did not intend to reorganize, but instead filed for some other purpose, sanctions should be imposed on the debtor and debtor's counsel. *St. Stephens,* 313 B.R. at 171; *Intercorp,* 309 B.R. at 694.

43.    Edward and Morrison clearly filed the case and removed the State Court Action without intent to reorganize and for some other purpose - to prevent Morrison's clients, Jin and Brian, from having to produce financial books and records that would show the true operating results of the Knockoff Korilla Businesses.  This is just part of Edward's continuing efforts to delay the State Court Action so he (and members of his family) can retain control of the Knockoff Korilla Businesses and continue to harvest their revenue streams for as long as possible.  Given the State Court Judge's year's of dealing with Edward's delay and failure to adhere to Court orders, it is not surprising that he would seek a new litigation forum.  This is blatant forum

shopping and litigation gamesmanship, and not a proper purpose for filing a Chapter 11 petition. Because the petition was signed by both Edward and Morrison, sanctions should be imposed on both of them. The sanctions should include payment of Plaintiffs' costs and expenses, including attorney's fees, in addressing this filing and removal.

## CONCLUSION

44.     This Chapter 11 case should be dismissed since it was filed in bad faith. The State Court Action should be remanded for this reason and because the removal was also in bad faith and this Court's jurisdiction over the State Court Action was not established. Further, remand is warranted because under applicable legal criteria, mandatory abstention applies, and discretionary abstention is also warranted. Finally, sanctions should also be awarded against Morrison and Edward for their false, fraudulent and bad faith filings and removal.

Dated: January 14, 2020
       New York, New York

                          **SAMUEL GOLDMAN & ASSOCIATES**

                          By:     /s/ Samuel Goldman_____
                                  Samuel Goldman
                                  200 Park Avenue, Suite 1700
                                  New York NY, 10166
                                  Tel. (212) 725-1400
                                  Fax. (212) 725-0805
                                  Email: sg@sgalaw.com
                                  *Attorneys for Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

.................................................................... X

In re:                                                          :

                                                                :       Chapter 11

                                                                :

AEGIS 42, LLC                                                   :

                                                                :       Case No.  1-19-47698-ess

                                                                :

                        Debtor.                                 :

.................................................................... X

### CERTIFICATE OF SERVICE

The undersigned certifies that on January 14, 2020, a copy of the annexed Motion was served by depositing same, enclosed in a properly addressed postage-paid envelope, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York, upon Lawrence Morrison, 87 Walker St, New York, NY 10013 and via e-mail to LMorrison@m-t-law.com. As well as hand delivered to the office of Marylou Martin, Assistant U.S. Trustee Office of the United States Trustee U.S. Federal Office Building 201 Varick Street, Suite 1006 New York, NY 10014

Dated: January 14, 2020
　　　 New York, NY

　　　　　　　　　　　　　　　　　　　　 ___/s/ Jacquelyne Gilman_____
　　　　　　　　　　　　　　　　　　　　 Jacquelyne Gilman